# FRANK A. MAHUTGA v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 16, 1931.

No. 28,253.

Samuel A. Anderson, for appellant.
John E. Palmer and Henry Spindler, for respondent.

[1]Reported in 234 N. W. 474.

Wilson, C. J.

The appeal is from a judgment entered pursuant to defendant's motion for judgment upon the pleadings and upon the opening statement of plaintiff's counsel.

The action, which is to recover for personal injuries to plaintiff while a head brakeman in defendant's employment, is based upon an alleged violation of the boiler inspection act, as amended, and brought under the federal employers liability act. Plaintiff was injured while his train was engaged in interstate transportation. It was December, and side cab curtains were being used. It was plaintiff's duty to catch a No. 19 order (an order for which stop is not necessary) which was fastened to a hoop held up by the agent from a station platform. The train was traveling about 20 miles per hour. The curtain was closed. In opening the curtain to perform this duty and in attempting to receive the order he fell and was injured.

Plaintiff's claim of negligence is that the curtain was so arranged in fact as to interfere with the free and unobstructed use of the handhold and that plaintiff was thereby exposed to unnecessary hazard and consequent injury. The allegations of the complaint and the very concise and frank opening statements of counsel to the jury in substance are as follows: That when plaintiff undertook to open the curtain for the purpose indicated it was drawn forward on the rings on the rod above and that the wind blew the curtain shut again; that plaintiff had to draw it forward two or three times; that he threw it forward so as to clear the grabiron in front of and on the outside of the curtain, and as he reached for this grabiron the wind forced the curtain back against his hand so that the curtain struck his hand deflecting it so that he missed the grabiron on the engine, lost his balance, fell to the platform of the station, and was injured. On the back edge of this curtain, the edge next to the tank, i. e. when the curtain is closed, the edge of the curtain had a wooden strip extending up and down for the purpose of stiffening it, to keep it from flapping in the wind. The claim is that this wooden strip struck plaintiff's hand so that he

missed the grabiron. The claim of negligence is that the carrier had this curtain so hung that it was unsafe in this, that the curtain could not be fastened back, fastened open while the work plaintiff was engaged in was being done, and that the carrier was negligent in not having proper loops or fasteners or some kind of a tie-back on this curtain whereby it could be fastened open at the time the work was being done.

Defendant's motion was upon the theory that if all the allegations of the complaint and the contents of counsel's opening statement to the jury, which was made a matter of record perhaps for the purpose of the motion, were true, the same would not constitute a cause of action.

■ At the time when the motion was made plaintiff's counsel disclaimed common law negligence and stood upon a violation of the federal boiler act. It was agreed that the decision and order of the interstate commerce commission hereinafter mentioned and the photographs now in the record be considered by the court in passing upon the motion, which was granted. The procedure is not novel but is rarely and sparingly invoked in practice. It of course should not be adopted unless counsel has deliberately stated his facts as he hopes to prove them. If he has so stated his case and is afforded an opportunity to explain and qualify his statements so far as the truth will permit, it is proper for the trial court to act upon the facts so asserted by the pleadings and the opening statement. Barrett v. M. St. P. & S. S. M. Ry. Co. 106 Minn. 51, 117 N. W. 1047, 18 L.R.A. (N.S.) 416, 130 A. S. R. 585, and St. Paul M. V. Co. v. Johnston, 127 Minn. 443, 149 N. W. 667. The practice where applicable is commendable in that it saves time and expense.

■ ∎The boiler inspection act was adopted February 17, 1911, 36 St. 913, c. 103, as amended March 4, 1915, 38 St. 1192, c. 169, and June 7, 1924, 43 St. 659, c. 355. 45 USCA, 79, § 23, conferred upon the interstate commerce commission the exclusive power to specify the sort of equipment to be used on locomotives. It was given authority to standardize such equipment. Napier v. Atlantic C. L. R. Co. 272 U. S. 605, 47 S. Ct. 207, 71 L. ed. 432.

■ The interstate commerce commission in Railroad Comm. of Wis. v. Aberdeen & R. R. Co. 142 I. C. C. 199, on May 7, 1928, rendered a decision wherein it approved the wide locomotive side curtain known as the Wisconsin curtain, which is the kind and type here involved. It was said that the curtain was to be applied and maintained so as not to interfere with the free and unobstructed use of the handholds, the handholds on the tender being offset for this purpose. The handhold herein involved was so offset. Following the decision the commission on May 7, 1928, made its order effective November 1, 1928, in the form of an amendment to rule 116 of the rules and regulations for the inspection and testing of steam locomotives and tenders approved and established in accordance with the act of February 17, 1911. A portion thereof relating to cab side curtains here applicable reads:

"Side curtains shall be of ample length and width, and be properly fitted and attached. Side curtains may be of the wide or narrow type. If wide side curtains extending from rear of cab back alongside of tender are used they shall extend at least 18 inches back of front of tender water legs and the tender handholds at gangway shall be offset at the rear so as to permit the side curtains to extend alongside of tender inside of handholds and not interfere with free and unobstructed use of the handholds. Side curtains shall have a suitable stiffening rod or member at rear of curtain. * * * Side curtains shall be so arranged and maintained that they can readily be opened, and shall be so arranged as not to interfere with free and unobstructed use of the handholds."

The order specifically provides that the carrier may apply additional protective equipment not inconsistent with safety or the provisions of the order.

This amendment to the rule is obviously adopted in recognition of the power given by the boiler inspection act, as construed in the Napier case, 272 U. S. 605, 47 S. Ct. 207, 71 L. ed. 432, to provide rules and regulations by which fitness for service shall be determined. If as said in the Napier case the protection now afforded by the commission's rules is deemed inadequate, application for

relief must be made to the commission. The decision of the commission recites that it is asked to prescribe appropriate rules and regulations under the boiler inspection act providing for the equipment of locomotives and tenders with suitable cab curtains. We think they determined the kind and type of a side curtain, to-wit: the Wisconsin curtain, as here used, to be "safe to operate  *   *   * without unnecessary peril to life or limb." [45 USCA, 79, § 23.] It was recognized that such a side curtain constituted some obstruction, and the commission in the decision said [142 I. C. C. 204]:

"In considering the matter of protection against the weather it should be borne in mind that sometimes in emergencies enginemen must hurriedly leave the cab. Under the latter circumstances it would be desirable to have no curtains or other obstructions in the way. Again, in practically all sections of the country weather conditions vary from time to time; therefore curtain arrangements most desirable under certain weather conditions may be less desirable under other weather conditions. The subject is one which should be considered with a view to arranging the cabs and curtains so as to afford the enginemen reasonable protection from inclement weather and at the same time not constitute too great an obstruction in emergencies or seriously interfere with enginemen in the performance of their duties under varying weather conditions."

Our construction of the decision and order of the commission is that it intended to and did standardize the Wisconsin side curtain, here used, as suitable for all the purposes of the law; and it follows that a compliance therewith makes the locomotive "safe to operate  *   *   * without unnecessary peril to life or limb." The decision of this ultimate fact rests solely with the commission. A jury cannot be permitted to substitute its judgment in lieu of the judgment of the commission, upon whom the law places the responsibility for such determination. Southern Pac. Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. ed. 335. The commission did not require tie-back equipment.

■ It is important to keep in mind that the charge of negligence in this case is not aimed at a defect in the particular curtain used

at the time of the accident.  It is a direct attack at the general proposition that curtains of this type, though approved by the commission, must be equipped with a tie-back appliance in order to protect the carrier from being held guilty of actionable negligence. But we know of no law that permits a jury, a court, or a state to make such a requirement.  We are of the opinion that the commission's power is exclusive.

Plaintiff argues that while the order states that the curtain shall be so arranged as not to interfere with free and unobstructed use of the handholds it does not specify what the carrier shall do to the end of seeing that the curtain shall be arranged so as not to interfere with the free and unobstructed use of the handholds. Plaintiff's contention is that the commission has in no way assumed to determine the necessary precautions to reach the desired end.  The argument is that such details are left to the carrier to choose the means to be employed to effect that result.  In support of this contention plaintiff cites the case of B. & O. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. ed. 419.  We believe the Groeger case to be distinguishable, and had the absence of a fusible plug been the sole claim of negligence in the Groeger case it would have been more like to this case.

Plaintiff is here attempting to have a jury say that defendant is negligent in failing to install equipment in addition to that required by the commission.  We think this cannot be done.  We are of the opinion that when the carrier complies with the requirements of the interstate commerce commission, as it has done here, and therefore the act of congress, it cannot be found guilty of actionable negligence because the plaintiff or a jury might think ordinary care required something additional.  Louisville & J. B. Co. v. U. S. 249 U. S. 534, 39 S. Ct. 355, 63 L. ed. 757; Napier v. Atlantic C. L. R. Co. 272 U. S. 605, 47 S. Ct. 207, 71 L. ed. 432.

Affirmed.