James J. ENGVALL, Plaintiff,

v.

SOO LINE RAILROAD COMPANY, d/b/a Canadian Pacific Railway Company, defendant and third-party plaintiff, petitioner, Appellant,

v.

General Motors Corporation, a foreign corporation, third-party defendant, Respondent.

No. C6–99–64.

Court of Appeals of Minnesota.

Sept. 26, 2000.

 

Eric J. Magnuson, Jeffrey R. Schmidt, Peter Gray, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN (for appellant)

David M. Heilbron, pro hac vice, Robert A. Brundage, McCutchen, Doyle, Brown & Enersen, LLP, Three Embarcadero Center, San Francisco, CA, Mickey W. Greene, Lezlie Ott Marek, Hanson, Marek, Bolkcom & Greene, Ltd., Minneapolis, MN, and Thomas J. Sweeney, Mark E. Gebauer, Eckert, Seamens, Cherin & Mellott, LLC, Pittsburgh, PA, for respondent.

Glenn Olander–Quamme, Spence, Ricke, Sweeney & Gernes, P.A., St. Paul, MN, and Louis P. Warchot, Daniel Saphire, Association of American Railroads Law Department, Washington, D.C., for amicus curiae Association of American Railroads.

Considered and decided by WILLIS, Presiding Judge, LANSING, Judge, and FOLEY, Judge.*

## OPINION

WILLIS, Judge

Plaintiff sued his employer, appellant Soo Line Railroad Company, for injuries plaintiff suffered in applying a handbrake on a locomotive. Soo Line filed a third-party complaint against respondent General Motors Corporation, the manufacturer of the locomotive, seeking contribution and indemnity. The district court granted General Motors' motion for summary judgment, concluding that Soo Line's claims were preempted by the federal Locomotive Inspection Act. This court dismissed Soo Line's appeal as untimely. The supreme court granted review, reversed, and remanded for consideration on the merits. We affirm.

## FACTS

Plaintiff James J. Engvall (Engvall) suffered a back injury on November 6, 1996, while, within the scope of his employment as a locomotive engineer for appellant Soo Line Railroad Company (Soo Line), he was applying, or "tying down," a handbrake on a locomotive. He brought suit against Soo Line under the Federal Employers' Liability Act (the FELA), 45 U.S.C. §§ 51–60 (1997), and the Locomotive Inspection Act (the LIA), formerly known as the Boiler Inspection Act, 49 U.S.C. §§ 20701–20703 (1997). Engvall's complaint alleged that Soo Line's negligence, including its failure to inspect and maintain its equipment and its failure to instruct its employees in the proper use of the equipment, was the cause of his injury.

Soo Line filed a third-party complaint against respondent General Motors Corporation (GM), the designer and manufacturer of the locomotive, alleging that GM failed to use reasonable care in designing and manufacturing the handbrake, thereby rendering it defective and unreasonably dangerous. Soo Line also asserted claims for contribution and indemnity. Soo Line later filed a proposed amended third-party complaint, alleging that GM had violated the LIA.

In its amended answer to the third-party complaint, GM raised the affirmative defense that federal law, including, but not limited to, the LIA and the Safety Appliance Act (the SAA), 49 U.S.C. §§ 20301–

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

20306 (1997), preempted Soo Line's claims for contribution and indemnity. GM moved for summary judgment on the ground of preemption on Soo Line's contribution and indemnity claims. The district court granted GM's motion for summary judgment, concluding that (1) Soo Line's state common-law "product liability" claims against GM were preempted by the LIA, (2) Soo Line had no claims against GM under the LIA or the SAA because GM was not a proper FELA defendant, and (3) there was no private right of action under either the LIA or the SAA. The district court stated that Soo Line's motion for partial summary judgment on the issues of contribution and indemnity and its motion to amend its third-party complaint to allege these causes of action were therefore rendered moot. Two months later, Engvall and Soo Line entered into a settlement that preserved Soo Line's contribution and indemnity claims, and final judgment was entered.

Soo Line appealed the district court's dismissal of its claims against GM. This court characterized the dismissal as one for lack of subject-matter jurisdiction, which is immediately appealable, and, by order, dismissed Soo Line's appeal as untimely. *Soo Line R.R. v. General Motors Corp.*, No. C6–99–64 (Minn.App. Mar. 16, 1999). The supreme court granted review and reversed this court's decision, remanding Soo Line's appeal for consideration on the merits. *Engvall v. Soo Line R.R.*, 605 N.W.2d 738 (Minn.2000).

### ISSUE

Does the federal Locomotive Inspection Act preempt state common-law claims for contribution or indemnity asserted by a railroad carrier against a locomotive manufacturer?

### ANALYSIS

■ On appeal from summary judgment [1], we consider whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In making this determination, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

■ Soo Line asserts that the equitable remedies of contribution and indemnity are not preempted by federal law and are available to railroad carriers that have incurred liability under the FELA due to the fault of third-party locomotive manufacturers. We disagree.

■ "The preemptive effect of a statute involves a question of law, which this court reviews de novo." *In re Speed Limit for Union Pac. R.R.*, 610 N.W.2d 677, 682 (Minn.App.2000) (citation omitted). Federal law may preempt state law when (1) a statute contains an express preemption clause, (2) preemption can be inferred from extensive federal involvement in a regulated field, or (3) state law conflicts with federal law. *Pikop v. Burlington*

---

1. Soo Line argues that because the district court confined its analysis to (1) the allegations in Engvall's complaint, (2) Soo Line's original complaint and proposed amended third-party complaint, and (3) GM's answer to the third-party complaint, this court should construe the district court's order as a dismissal for failure to state a claim on which relief can be granted and review the court's decision under that standard. We disagree. Contrary to Soo Line's assertion, the district court's order states that it is "[b]ased on all of the files, records, proceedings and arguments of counsel held herein." Where matters outside the pleadings are presented to and not excluded by the district court, we review the court's decision under a summary-judgment standard. *Carlson v. Lilyerd*, 449 N.W.2d 185, 187 (Minn.App.1989), *review denied* (Minn. Mar. 8, 1990); *see also* Minn. R. Civ. P. 12.02(e) (stating that motion to dismiss for failure to state a claim is converted to summary-judgment motion if court considers matters outside pleadings). Therefore, Soo Line's argument that this court's standard of review should be that applicable to rule 12.02(e) motions fails.

*Northern R.R.,* 390 N.W.2d 743, 748 (Minn.1986). "If Congress evidences an intent to occupy a given field, any state law falling within that field is preempted." *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citations omitted).

For more than a century, railroads have been subject to comprehensive federal regulation to advance safety and assure national uniformity of regulation. *United Transp. Union v. Long Island R.R.,* 455 U.S. 678, 687, 102 S.Ct. 1349, 1355, 71 L.Ed.2d 547 (1982). To cover all aspects of locomotive safety, Congress enacted the Boiler Inspection Act, now known as the Locomotive Inspection Act (the LIA), 49 U.S.C. § 20701 (1997), placing on carriers the absolute duty to maintain locomotives in a safe condition and conferring on the Secretary of Transportation[2] exclusive authority to regulate "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier v. Atlantic Coast Line R.R.,* 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432 (1926). Because the LIA was intended to occupy the field, "requirements by the states are precluded, however commendable or however different their purpose." *Id.* at 613, 47 S.Ct. at 210.

The FELA provides that railroad carriers are responsible for compensating their employees who are injured as a result of employer negligence. 45 U.S.C. § 51 (1997). Although the LIA imposes on railroad carriers the duty to provide their employees with safe equipment, the statute does not create a private right of action for injured employees. *See Urie v. Thompson,* 337 U.S. 163, 188, 69 S.Ct. 1018, 1033–34, 93 L.Ed. 1282 (1949); *accord* 49 U.S.C. §§ 20301–06 (1997) (the SAA). But because the United States Supreme Court has construed the LIA as an amendment to the FELA, proof of an LIA violation is sufficient to prove negligence as a matter of law under the FELA. *Urie,* 337 U.S. at 189, 69 S.Ct. at 1034.

Soo Line does not dispute that the FELA provides railroad employees with their exclusive remedy for damages for railroad-related injuries, but it argues that, notwithstanding the nondelegable duty imposed on the railroad employer, nothing in the act itself prevents the railroad from seeking contribution or indemnity where state law permits and another party bears some responsibility for the employee's injuries. But contribution requires common liability, which does not exist unless the injured party could bring a direct action against each of the tortfeasors. *Nelson v. Larsen,* 405 N.W.2d 455, 458 (Minn.App. 1987). Here, no liability can attach to GM under the FELA because only railroad carriers, not locomotive manufacturers, are proper FELA defendants.

■ Soo Line argues that indemnity does not require common liability but arises "where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged" or "where the one seeking indemnity has only a derivative or vicarious liability for damages caused by the one sought to be charged." *See Tolbert v. Gerber Indus., Inc.,* 255 N.W.2d 362, 366 (Minn.1977) (citation omitted). Soo Line does not identify any specific FRA regulation violated by GM's handbrake design. Under Minnesota law, a manufacturer's compliance with FRA standards qualifies a locomotive as "safe to operate" as a matter of law. *See Mahutga v. Minneapolis, St. Paul & Sault Ste. Marie Ry.,* 182 Minn. 362, 366, 234 N.W. 474, 476 (1931).

■ Granting Soo Line's equitable claim for contribution or indemnity would require a determination of liability or breach of duty based on defects in designing and constructing locomotives. But under the

---

2. Originally the Interstate Commerce Commission regulated locomotives. In 1966, Congress transferred this authority to the Secretary of Transportation. Pub.L. No. 89–670, § 6(e)(1), 80 Stat. 931, 1,110–11. The Federal Railroad Administration (FRA) now exercises this power. 49 C.F.R. § 1.49(c)(5), (g) (1998).

LIA, regulation of the field of locomotive design and construction has been exclusively delegated to the FRA. Accordingly, any liability or breach of duty would necessarily be premised on additional state law requirements, which are precluded by federal law. *See Napier,* 272 U.S. at 613, 47 S.Ct. at 210; *see also Law v. General Motors Corp.,* 114 F.3d 908, 911–12 (9th Cir.1997) (stating that imposing tort liability on railroad-equipment manufacturers would force them to conform to design and construction standards imposed by states). Because the LIA was intended to occupy the field, we conclude that the LIA preempts state common-law claims for contribution or indemnity based on design and construction asserted by a railroad carrier against a locomotive manufacturer.

## DECISION

Because the LIA preempts Soo Line's equitable claims for contribution or indemnity, the district court did not err in granting GM summary judgment.

**Affirmed.**