**James J. ENGVALL, Plaintiff,**

v.

**SOO LINE RAILROAD COMPANY, d/b/a Canadian Pacific Railway Company, Defendant and Third–Party Plaintiff, Petitioner, Appellant,**

**General Motors Corporation, a foreign corporation, Third–Party Defendant, Respondent.**

No. C6–99–64.

Supreme Court of Minnesota.

Aug. 2, 2001.

---

## OPINION

PAGE, Justice.

We are asked to decide whether a railroad can maintain a cause of action for contribution and/or indemnity against a railroad locomotive manufacturer when the railroad is sued by an employee under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1994). The district court granted summary judgment to the manufacturer, holding that federal law preempted the contribution and indemnity actions and that the manufacturer was not a proper FELA defendant. The court of appeals affirmed. We reverse.

This case arises from an alleged injury suffered by James Engvall, a locomotive engineer for appellant Soo Line Railroad Company (Soo Line), in the course of his employment on November 6, 1996, while operating an SD60 series locomotive manufactured by the Electro–Motive Division of respondent General Motors Corporation (GM). Engvall sued Soo Line under the FELA and the Locomotive Inspection Act ((LIA), formerly known as the Boiler Inspection Act (BIA)),[1] 49 U.S.C. §§ 20701–20703 (1994), specifically alleging that while he was applying the SD60's handbrake the handbrake's handwheel mechanism slipped, causing him to injure his back. Soo Line, in turn, filed a third-party complaint against GM, alleging, among other things, that Engvall's injury was the result of a design flaw in the SD60's handbrake doubler assembly.[2] In the third-party complaint, Soo Line asserted that GM was liable for Engvall's injuries under various state common law claims and that Soo Line was entitled under Minnesota law to contribution and/or indemnity from GM if Engvall recovered from Soo Line. GM raised the affirmative defense that Soo Line's claims are preempted by federal law and moved for summary judgment. Soo Line filed a cross-motion for partial sum-

---

1. For ease of discussion, the LIA and the BIA will be referred to as "LIA."

2. According to Soo Line, the SD60's handbrake allows loose or slack chain in the doubler assembly to become tangled. Soo Line claims that if the tangled chain releases while the handbrake is being applied, the loss of resistance will cause the handwheel to unexpectedly slip, and that this is what caused Engvall's injuries. Soo Line claims that a metal deflector plate could have been installed above the doubler assembly to prevent such entanglements and the resulting slippage.

mary judgment, asserting that it was entitled to contribution and/or indemnity from GM for any liability it owed on Engvall's FELA claims. During the summary judgment proceedings, Soo Line moved the court for leave to amend its third-party complaint to include claims for contribution and/or indemnity based on the SD60's handbrake doubler assembly's alleged noncompliance with the LIA and the Safety Appliance Act, 49 U.S.C. §§ 20301–20306 (1994) (SAA), which, like the LIA, is a railroad safety statute. Following those proceedings, Soo Line settled with Engvall, leaving only its contribution and indemnity claims against GM.

The district court found that the LIA preempted Soo Line's state common law claims and granted GM's summary judgment motion. The court also found that "Soo Line has no claims against General Motors under either the LBIA [sic] or the SAA because General Motors is not a proper FELA defendant and there exists no private right of action under either statute." Finally, based on these findings, the district court further found that Soo Line's motions for partial summary judgment and amendment of its third-party complaint were moot. On appeal,[3] the court of appeals affirmed the district court, holding "that the LIA preempts state common-law claims for contribution or indemnity based on design and construction asserted by a railroad carrier against a locomotive manufacturer." *Eng-*

*vall v. Soo Line R.R.*, 617 N.W.2d 444, 448 (Minn.App.2000) (*Engvall II* ).

■■■ This court reviews an order granting summary judgment to determine whether there are any genuine issues of material fact and whether the lower court erred in applying the law. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 383 (Minn.1999). In doing so, the court "views the evidence in the light most favorable to the party against whom summary judgment was granted." *Ciardelli v. Rindal*, 582 N.W.2d 910, 912 (Minn.1998).

We address as a threshold matter whether Soo Line can maintain a state law cause of action based on a violation of the LIA when the alleged equipment problem does not violate Federal Railroad Administration (FRA) regulations.[4] Holding that Soo Line survives summary judgment on that basis, we turn to whether the fact that Engvall could not have brought a direct action against GM under the FELA precludes the existence of common liability, a prerequisite to a claim for contribution. To answer the question whether GM and Soo Line have common liability, we must determine whether a state law claim against GM based on the LIA is preempted by federal law. Finally, we address whether Soo Line may pursue its claim for indemnity even though the FELA imposes a nondelegable duty on employers.

## I.

■■■ The background for this lawsuit is the FELA, a general negligence statute,

---

3. The court of appeals initially dismissed Soo Line's appeal as untimely. Granting review, this court reversed and remanded for consideration of Soo Line's appeal on the merits. *Engvall v. Soo Line R.R.*, 605 N.W.2d 738 (Minn.2000) (*Engvall I*).

4. The Secretary of Transportation, acting through the FRA, may promulgate regulations to implement the requirements of the LIA. 49 U.S.C. § 20103 (1994); 49 C.F.R.

§ 1.49(c)(5), (g) (2000). The Interstate Commerce Commission (ICC) originally regulated locomotives and other railroad equipment, but its authority was transferred to the Secretary of Transportation in 1966. Pub.L. No. 89–670, § 6(e)(1), 80 Stat. 931 (Oct. 15, 1966); *see Napier v. Atl. Coast Line R.R.*, 272 U.S. 605, 608, 47 S.Ct. 207, 71 L.Ed. 432 (1926).

*Waymire v. Norfolk and W. Ry.*, 218 F.3d 773, 775 (7th Cir.2000), that allows railroad employees to recover from their employers for employment-related injuries caused by employer negligence, *Engvall I*, 605 N.W.2d at 739 n. 1; 45 U.S.C. § 51. Under the FELA, the employer's duty is nondelegable. *Shenker v. Balt. & Ohio R.R.*, 374 U.S. 1, 7, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963). At the same time, the LIA " 'imposes upon the [railroad] carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate ... without unnecessary peril to life or limb.' " *Lilly v. Grand Trunk W. R.R.*, 317 U.S. 481, 485, 63 S.Ct. 347, 87 L.Ed. 411 (1943) (quoting *S. Ry. v. Lunsford*, 297 U.S. 398, 401, 56 S.Ct. 504, 80 L.Ed. 740 (1936)); *see Engvall I*, 605 N.W.2d at 739 n. 1 (noting that the LIA "imposes an absolute requirement that employers provide safe equipment"); *see also* 49 U.S.C. § 20701(1) (1994).[5] The LIA differs from the FELA in that the LIA does not confer any right of action on injured employees. *Urie v. Thompson*, 337 U.S. 163, 188, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Engvall I*, 605 N.W.2d at 739 n. 1. The United States Supreme Court has construed the LIA to be an amendment to the FELA, so that "proof of [an LIA violation] is effective to show negligence as a matter of law" under the FELA. *Urie*, 337 U.S. at 189, 69 S.Ct. 1018; *Engvall I*, 605 N.W.2d at 739 n. 1. The "prime purpose" of both the FELA and the LIA is "the protection of railroad employees * * * from injury due to industrial accident," *Urie*, 337 U.S. at 191, 69 S.Ct. 1018 (citation omitted), and the LIA is "to be read and applied with the [FELA]," *Balt. & Ohio Ry. v. Groeger*, 266

U.S. 521, 528, 45 S.Ct. 169, 69 L.Ed. 419 (1925). As noted, the FRA may promulgate regulations implementing the requirements of the LIA. 49 U.S.C. § 20103; 49 C.F.R. § 1.49(c)(5), (g).

The parties agree on two significant matters. First, that the SD60 handbrake is a "part" or "appurtenance" of a locomotive within the meaning of the LIA. And second, even though the LIA refers only to "railroad carrier[s]," the parties agree that manufacturers of railroad equipment are also subject to the requirements of the LIA. *See* 49 U.S.C. § 21302 (1994); 49 C.F.R. 229.7(b) (2000).

■ Does Soo Line have a state law cause of action based on a violation of the LIA when the claimed equipment problem does not violate FRA regulations? GM argues that an action based on the LIA must allege a violation of an FRA regulation, because a locomotive part or appurtenance complies with the LIA as a matter of law unless the part or appurtenance violates a specific FRA regulation. On this basis GM argues, relying principally on the Supreme Court's decision in *Groeger*, that "courts and juries have no authority to judge locomotive designs deficient that do not violate a specific FRA regulation, for regulation remains FRA's exclusive province." GM's reliance on *Groeger* is unwarranted.

In *Groeger*, a locomotive engineer was killed when the steam boiler of the locomotive he was operating exploded. The engineer's wife brought an action against her husband's employer under the FELA and the LIA. *Groeger*, 266 U.S. at 522–23, 45 S.Ct. 169. The trial court entered judgment for the wife following a jury verdict

---

**5.** The LIA provides that "[a] railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appur-

tenances * * * are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1).

in her favor, and the circuit court of appeals affirmed. The Supreme Court reversed, concluding that part of the jury instructions was improper.

The trial court's error involved the part of the jury instructions that allowed the jury to determine whether "the standard of duty imposed by the law required a fusible safety plug to be installed." *Id.* at 528, 531, 45 S.Ct. 169. The problem with such an instruction, the Court explained, is that the LIA only requires equipment to meet a certain level of safety, and does not require that this level of safety be achieved in any particular manner. *Id.* at 529, 45 S.Ct. 169 ("carriers were left free to determine how their boilers should be kept in proper condition for use without unnecessary danger"); *id.* at 530, 45 S.Ct. 169 ("[i]nventions are occurring frequently, and there are many devices to accomplish the same purpose"). Thus, the Court held "that defendant was not liable for failure to furnish the best mechanical contrivances and inventions or to discard appliances upon discovery of later improvements, *provided the boiler was in proper condition and safe to operate, as required by the statute.*" *Id.* at 529, 45 S.Ct. 169 (emphasis added).[6] Significantly, however, the Supreme Court approved of a jury instruction that incorporated the standard found in the LIA:

> The court, *in harmony with the provisions of* [*the LIA* ], instructed the jury that the standard of defendant's duty was to put and keep the locomotive *in proper condition and safe to operate,* and that it would be a violation of defendant's duty if the engine * * * was permitted to be in such a condition that

it could not be employed * * * *without unnecessary peril to life or limb.*

*Groeger,* 266 U.S. at 527–28, 45 S.Ct. 169 (emphasis added). Even more relevant is the Court's observation: "There is nothing in the act or in any rule, regulation or order authorized by it, which specifies the use of fusible plugs. This, however, does not relieve the defendant of the duty to have and keep its boilers safe for use as required by the act." *Id.* at 529, 45 S.Ct. 169.

*Groeger* simply does not establish that a violation of a specific FRA regulation is necessary for a court or jury to decide that a locomotive part or appurtenance does not comply with the LIA. To the contrary, it establishes that a violation of the LIA can occur without a violation of a specific FRA regulation. *Groeger,* 266 U.S. at 529, 45 S.Ct. 169; *see also Great N. Ry. v. Donaldson,* 246 U.S. 121, 128, 38 S.Ct. 230, 62 L.Ed. 616 (1918) (rejecting railroad's claim that, because a particular type of bolt used in a boiler had not been disapproved by a federal boiler inspector, the adequacy of the bolt under the LIA was conclusively established). As the Court stated in *Urie,* the LIA "simply outline[s] a general standard which *may* be more specifically articulated in rules" promulgated by the FRA. 337 U.S. at 190–91, 69 S.Ct. 1018 (emphasis added).

*Groeger* further establishes that, although a fact finder may not decide whether a locomotive part or appurtenance must be equipped with a particular device in order to comply with the requirements of the LIA, a fact finder may determine the broader question of whether the part or

---

**6.** Moreover, despite its conclusion that a jury may not determine whether the BIA specifically requires the use of fusible plugs, the Court noted that *"[t]he presence or absence of a fusible plug was a matter properly to be taken into consideration* in connection with other facts bearing upon the kind and condition of the boiler in determining the *essential and ultimate question, i.e. whether the boiler was in the condition required by the act." Groeger,* 266 U.S. at 531, 45 S.Ct. 169 (emphasis added).

appurtenance was "in proper condition and safe to operate" without unnecessary danger of personal injury. *Groeger*, 266 U.S. at 527, 45 S.Ct. 169; *see also* 49 U.S.C. § 20701. And in doing so, the fact finder may consider the "presence or absence" of a particular device, such as a fusible plug or, in this case, a metal deflector plate.[7] *Groeger*, 266 U.S. at 531, 45 S.Ct. 169. Contrary to GM's contention, this will not result in inconsistent railroad operating standards among states. The applicable standard, as always, is the standard imposed by the LIA.

GM also relies on this court's decision in *Mahutga v. Minneapolis, St. Paul & Sault Ste. Marie Ry.*, 182 Minn. 362, 234 N.W. 474 (1931). In *Mahutga*, a brakeman claimed that he suffered a work injury as a result of the design of the side cab curtains on the locomotive on which he worked. *Id.* at 363, 234 N.W. at 474–75. The design of the side cab curtains had been approved by the ICC. *Id.* at 366, 234 N.W. at 476. In bringing his lawsuit under the FELA, the brakeman alleged that the side cab curtains violated the LIA. *Id.* at 363, 234 N.W. at 474.

Because the ICC had approved the design of the side cab curtains, we concluded that their use made the locomotive safe to operate without unnecessary peril to life or limb, and that "[a] jury cannot be permitted to substitute its judgment" for that of the ICC. *Id.* at 366, 234 N.W. at 476. Hence, *Mahutga* merely establishes that, when the FRA has found a particular design of a part or appurtenance to be safe to operate as required by the LIA, a jury

cannot find otherwise. Therefore, *Mahutga* provides no support for GM's position unless the FRA has in fact found the particular design of the handbrake at issue to be safe to operate under the LIA.

GM, citing 49 C.F.R. §§ 231.1–231.14 and 231.24–28 (2000), argues that the FRA has promulgated "detailed regulations governing handbrakes," and that there is no indication that its SD60 handbrake violates these regulations. Soo Line replies that these regulations apply to the design and manufacture of *railcar* handbrakes, and not *locomotive* handbrakes. Whether they apply or not, GM cites no regulation that specifically approves of, or even addresses, the design of the particular handbrake used on the SD60. Although the SD60 handbrake very well may comply with the regulations as far as they go, the absence of any regulation addressing the handbrake's doubler assembly presents the same situation present in *Groeger*, where the regulations addressed boiler construction and maintenance but did not specifically require the use of fusible plugs. *Groeger*, 266 U.S. at 525–26, 45 S.Ct. 169 (noting ICC Rule 25 relating to "staybolts" on boilers, and ICC Rule 14 relating to the cleaning of fusible plugs on boilers equipped with such plugs).

Accordingly, neither *Groeger* nor *Mahutga* supports GM's position. Rather, they support Soo Line's position that the LIA may be violated in the absence of an on-point FRA regulation. Therefore, we conclude that a court or jury may properly determine whether the SD60 handbrake was "in proper condition and safe to oper-

---

**7.** GM also asserts that its position is supported by the Supreme Court's decision in *Napier*. GM correctly notes that, according to *Napier*, the FRA has exclusive authority to specify the equipment to be used on locomotives. *Napier*, 272 U.S. at 612–13, 47 S.Ct. 207. This is entirely consistent with *Groeger*, which similarly rejected the notion that a jury may determine whether a locomotive must be equipped with a particular piece of equipment. But, as *Groeger* makes clear, the issue of whether a locomotive is "in proper condition and safe to operate" under the LIA is a separate question, and one which a jury may properly decide. *Groeger*, 266 U.S. at 527–28, 45 S.Ct. 169.

ate without unnecessary danger of personal injury" as required by the LIA, and a claim brought on that basis is not necessarily precluded simply because it does not allege a violation of FRA regulations.

## II.

We next address Soo Line's claim for contribution from GM for any liability Soo Line may have under the FELA. It appears well-settled that a railroad may seek contribution or indemnity from a third party for liability incurred under the FELA when state law permits it. *See, e.g., Ellison v. Shell Oil Co.*, 882 F.2d 349, 353–54 (9th Cir.1989); *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 399 (3d Cir.1987); *Ala. Great S. R.R. v. Chi. & Northwestern Ry.*, 493 F.2d 979, 983 (8th Cir.1974); *Fort Worth & Denver Ry. v. Threadgill*, 228 F.2d 307, 312 (5th Cir. 1955); *Stephens v. S. Pac. Transp. Co.*, 991 F.Supp. 618, 620 (S.D.Tex.1998).

However, "Minnesota's time-honored common law of contribution [does not] justify * * * contribution from parties who are not liable to the injured party. The very essence of the action of contribution is common liability." *Horton by Horton v. Orbeth, Inc.*, 342 N.W.2d 112, 114 (Minn.1984) (internal quotation marks omitted). " '[I]t is joint *liability*, rather than joint or concurring *negligence*, which determines the right of contribution.' " *Id.* (alteration in original) (quoting *Spitzack v. Schumacher*, 308 Minn. 143, 148 n. 2, 241 N.W.2d 641, 645 n. 2 (1976)).

Soo Line argues that common liability exists because Engvall could have brought a state common law action of negligence per se based on a violation of the LIA against GM. In response, GM first argues that Engvall could not have brought a direct action against it because *Urie* establishes that there is no private right of action under the LIA and, although a railroad employee may use an LIA violation to establish negligence per se in a FELA action, manufacturers are not liable under the FELA. Although Soo Line concedes that manufacturers are not proper FELA defendants, it contends that GM misinterprets *Urie*. We agree. In *Urie*, the Supreme Court stated that the LIA and the SAA[8] were amendments to the FELA. 337 U.S. at 189, 69 S.Ct. 1018. In doing so, the Court noted that "by its own terms the [LIA], like the [SAA], does not purport to confer any right of action upon injured employees." *Urie*, 337 U.S. at 188, 69 S.Ct. 1018 (footnote omitted). However, this merely means that the LIA and the SAA do not provide statutory causes of action, and that a party suing for violation of either act must do so under a common law action. *See Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969) (noting that the SAA "did not create a federal cause of action for either employees or nonemployees seeking damages for injuries resulting from a railroad's violation of the Act" and that, although Congress subsequently provided employees with such a cause of action by enacting the FELA, "the nonemployee must look for his remedy to a common law action in tort"); *Fairport, Painesville & E. R.R. v. Meredith*, 292 U.S. 589, 596–97, 54 S.Ct. 826, 78 L.Ed. 1446 (1934) (automobile driver injured in collision with train at railroad crossing may recover in state common law action against railroad based on SAA violation); *Steffey v. Soo Line R.R.*, 498 N.W.2d 304, 307 (Minn.App.) (intoxicated trespasser may assert state common law

---

**8.** As with the LIA, a violation of the SAA constitutes negligence per se under the FELA. *Urie*, 337 U.S. at 189, 69 S.Ct. 1018. Railroad equipment manufacturers are subject to the SAA by operation of 49 U.S.C. § 21302.

claim against railroad based on LIA violation), *rev. denied* (Minn. May 28, 1993).

▆▆▆ Although the claims in *Crane,* *Meredith,* and *Steffey* were asserted against railroads rather than manufacturers, GM concedes that manufacturers are subject to the LIA. Nor is it significant that the claims in those cases were asserted by nonemployees, while Engvall was an employee. In *Meredith,* the Supreme Court stated:

> The federal Safety Appliance Act, as we already have said and this court repeatedly has ruled, imposes absolute duties upon interstate railway carriers and thereby *creates correlative rights in favor of such injured persons as come within its purview;* but the *right to enforce the liability which arises from the breach of duty is derived from the principles of the common law.*

292 U.S. at 598, 54 S.Ct. 826 (emphasis added). Moreover, the Supreme Court has stated that the LIA, "like the Safety Appliance Act, is to be liberally construed in the light of its *prime purpose, the protection of employees* and others by requiring the use of safe equipment." *Lilly v. Grand Trunk W. R.R.,* 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411 (1943) (emphasis added). Because the "prime purpose" of both the LIA and the SAA includes "the protection of employees," *Lilly,* 317 U.S. at 486, 63 S.Ct. 347 railroad employees such as Engvall clearly fall within the "purview" of those statutes and may "enforce the liability which arises from the breach of duty" under those statutes when permitted by the common law, *Meredith,* 292 U.S. at 598, 54 S.Ct. 826. We therefore find no merit in GM's argument that a violation of the LIA on these facts cannot be used as the basis for a private negligence action brought under the common law. When an employee could have brought a state common law action alleging negligence per se against a manufacturer based on violation of the LIA, common liability between the employer and manufacturer exists sufficient to state a cause of action for contribution.

▆▆▆ GM next argues that allowing an employee to bring a negligence per se action based on violation of the LIA intrudes on a field Congress has reserved for federal law. There are three situations in which state law is preempted under the Supremacy Clause, U.S. Const., art. VI. cl. 2:(1) explicit preemption; (2) "field" preemption, under which state law is preempted "where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively"; and (3) where there is an actual conflict between state and federal law. *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). GM has argued only that the second form of preemption, field preemption, applies, and the parties agree that the field preempted by the LIA includes all state law respecting the design, construction, or material of locomotives. The question, therefore, is whether that field includes a state law cause of action premised on a violation of the preempting statute.

Soo Line does allege a design defect, thereby implicating the field preempted by the LIA. Soo Line argues, however, that although contribution and indemnity are *state* law remedies, its claims of liability based on the *federal* standard found in the LIA do not interfere with the federal regulatory scheme and therefore are not preempted.

In *English,* the Court held that the field preempted by federal law did not include a state law cause of action for intentional infliction of emotional distress based on actions by the plaintiff's employer allegedly taken in retaliation for her nuclear safety complaints. 496 U.S. at 76–77, 86, 110

S.Ct. 2270. In doing so, the Court noted that the question of whether a state law falls within a preempted field is determined not only "by reference to the purpose of the state law in question," but also by reference to its "actual effect," and that "for a state law to fall within the preempted zone, it must have some direct and substantial [rather than remote] effect" on the regulated field. *Id.* at 84, 85, 110 S.Ct. 2270. Soo Line contends that, because a negligence per se claim based on a violation of the LIA would not have any direct and substantial effect on the regulated field of locomotive design, construction, and material, such a claim does not fall within the preempted field.[9]

GM claims that the preempted field includes all state law actions. The weakness in this position is that it equates the preemption of state law pertaining to locomotive design, construction, and material, with the preemption of all state law actions. Ordinarily, a plaintiff who brings a state law action will necessarily also rely on a state law standard of care because the action and the substantive law are intertwined. For instance, a plaintiff bringing a state law negligence action will generally rely on the state's substantive law on negligence. Soo Line's state law contribution and indemnity claims, by contrast, do not rely on any substantive state law standard, but instead rely on the standard imposed by the LIA, and GM cites no case in which a court held such claims to be preempted. Instead, GM cites a number of cases that purport to hold that the LIA preempts common law actions against manufacturers. *See Oglesby v. Del. & Hudson Ry.,* 180 F.3d 458 (2d Cir.) (action by injured railroad employee against railroad, under the FELA, and locomotive manufacturer), *cert. denied,* 528 U.S. 1004, 120 S.Ct. 498, 145 L.Ed.2d 384 (1999); *Springston v. Consol. Rail Corp.,* 130 F.3d 241 (6th Cir.1997) (action by automobile driver injured in collision with a train against the railroad owner of the train and track, and the train manufacturer); *Law v. Gen. Motors Corp.,* 114 F.3d 908 (9th Cir.1997) (action by railroad employees against locomotive brake and engine manufacturers).

However, all of these cases involve claims that a manufacturer was liable based on its failure to meet a standard imposed by *state* law rather than *federal* law. *See Oglesby,* 180 F.3d at 460; *Springston,* 130 F.3d at 244; *Law,* 114 F.3d at 909. Therefore, these cases provide no support for holding that a state law action against a manufacturer, whose alleged liability is premised on a failure to comply with the LIA, is preempted. In such an action, no state standard is imposed on the manufacturer. Because no state standard is imposed, there is no dan-

---

**9.** Citing *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), Soo Line also argues that "in at least one other federal regulatory context, the United States Supreme Court has held that a state law negligence *per se* claim is not preempted * * * if * * * premised upon violation of the pertinent *federal* regulations." *Medtronic* is distinguishable, however, because the Court held that, under the express preemption provision of the statute at issue, "a state law will [in most cases] be pre-empted only to the extent that the FDA has promulgated a relevant federal 'requirement.'" *Id.* at 496, 116 S.Ct. 2240. The Court observed that the FDA was "uniquely qualified to determine" whether a given state law prevented the full realization of Congress' objectives and purposes, and therefore should be preempted, and that the FDA had expressly stated that the statute does not preempt state requirements that are equal or substantially identical to the statute's requirements. *Id.* at 496–97, 116 S.Ct. 2240. In contrast, the Court has held that the LIA "was intended to occupy the field" of regulating locomotive equipment, and that state standards within this field are preempted even in the absence of a specific FRA regulation. *Napier v. Atl. Coast Line R.R.,* 272 U.S. 605, 613, 47 S.Ct. 207, 71 L.Ed. 432 (1926).

ger of undermining the goal of nationwide uniformity of railroad operating standards, the primary rationale for holding state law claims preempted. *See Oglesby,* 180 F.3d at 461; *Law,* 114 F.3d at 910–11. Accordingly, although cases such as *Oglesby, Springston,* and *Law* are said to hold that all state law claims against a railroad manufacturer are preempted, it is more accurate to say that they hold that claims seeking to impose a state law standard of care on a manufacturer (or a railroad) are preempted. We conclude that the field preempted by the LIA does not include state common law actions based on a violation of the LIA. Thus, because Engvall could have brought a state common law action of negligence per se against GM based on a violation of the LIA, we hold that GM is not entitled to summary judgment on Soo Line's contribution claim.

### III.

Finally, we address whether the district court properly granted summary judgment on Soo Line's indemnity claim. Unlike contribution, where responsibility for damages is reallocated based on relative fault, indemnity "shifts the entire loss from one culpable wrongdoer to another." *Tolbert v. Gerber Indus., Inc.,* 255 N.W.2d 362, 367 & n. 9 (Minn.1977). In *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960), this court clarified the situations in which one joint tortfeasor may obtain indemnity from another joint tortfeasor. These include:

(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

(2) Where the one seeking indemnity has incurred liability by action at the direction of, in the interest of, and in reliance upon the one sought to be charged.

(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged.

(5) Where there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved.

*Id.* at 372, 104 N.W.2d at 848 (footnotes omitted). We subsequently foreclosed indemnity in the fourth category, that is, where the one seeking indemnity is liable merely because of failure to discover or prevent the misconduct of the one sought to be charged, and to that extent overruled all cases to the contrary, including *Hendrickson. Tolbert,* 255 N.W.2d at 366–68 & n. 11; *see also Ploog v. Ogilvie,* 309 N.W.2d 49, 53 (Minn.1981) ("A cotortfeasor who is causally negligent may not recover indemnity from another cotortfeasor."). Instead, the court in *Tolbert* "limit[ed] the reallocation of loss between joint tortfeasors [in the fourth category] to contribution based upon relative fault." *Tolbert,* 255 N.W.2d at 367.

In this case, the fourth category would have applied had *Tolbert* not eliminated it as a basis for indemnity. Of the remaining categories, the second and fifth are clearly inapplicable. Nor does the third appear applicable and, in any event, Soo Line has not alleged that its liability to Engvall arose because GM breached a duty it owed to Soo Line. This leaves the first category, where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

GM argues that Soo Line cannot rely on this first category because Soo Line's liability to Engvall was based, at least in part and perhaps in whole, on Soo Line's own breach of its absolute and non-delegable duty to Engvall. The LIA imposed on Soo Line an "absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate in active service without unnecessary peril to life or limb." *S. Ry. v. Lunsford,* 297 U.S. 398, 401, 56 S.Ct. 504, 80 L.Ed. 740 (1936). Neither actual nor constructive notice to Soo Line was necessary to establish liability. *Groeger,* 266 U.S. at 527, 45 S.Ct. 169. If the handbrake did not comply with the LIA, that alone would be sufficient for Engvall to establish that Soo Line violated its duty to him under the FELA and the LIA. "[P]roof of [a violation of the LIA] is effective to show negligence as a matter of law" under the FELA. *Urie,* 337 U.S. at 189, 69 S.Ct. 1018; *Engvall I,* 605 N.W.2d at 739 n. 1. Nor has Soo Line attempted, either in its briefs or at oral argument, to show that its liability to Engvall was only derivative or vicarious.

Nonetheless, it is conceivable that a jury, in weighing the respective fault of GM and Soo Line, could find GM 100% at fault and Soo Line not at fault, despite Soo Line's nondelegable duty. Unless the fact finder does so, indemnity is not available to Soo Line because its liability would not be entirely derivative or vicarious. Because the jury might conceivably allocate to GM 100% of the fault, we conclude that GM is not entitled to summary judgment on Soo Line's indemnity claim.[10]

For the foregoing reasons, we reverse and remand to the district court.

Reversed and remanded.

---

10. Nor do we find GM's "nondelegable duty" argument persuasive. As we noted previously, several federal courts have held that a railroad may seek contribution or indemnity from a third party for liability incurred under the FELA when state law permits. *See, e.g., Ellison v. Shell Oil Co.,* 882 F.2d 349, 353–54 (9th Cir.1989); *Shields v. Consol. Rail Corp.,* 810 F.2d 397, 399 (3d Cir.1987); *Ala. Great S. R.R. v. Chi. & Northwestern Ry.,* 493 F.2d 979, 983 (8th Cir.1974); *Fort Worth & Denver Ry. Co. v. Threadgill,* 228 F.2d 307, 312 (5th Cir. 1955); *Stephens v. S. Pac. Transp. Co.,* 991 F.Supp. 618, 620 (S.D.Tex.1998). Both *Elli-son* and *Stephens* explicitly rejected the "nondelegable duty" argument raised by GM. *Ellison,* 882 F.2d at 353 ("The FELA's purpose of providing recovery for injured workers is not defeated by permitting an employer to recoup its losses in part or in full from a third party, when the circumstances and state law permit."); *Stephens,* 991 F.Supp. at 620 ("While an employer's duties under FELA may be non-delegable, there also exist separate, independent duties which a third party may owe to either the plaintiff-employee or the defendant-employer, or both.").