Union Pacific Railroad Company,
Plaintiff-Appellant,

v.

Motive Equipment, Inc.,
Defendant-Third-Party Plaintiff-Respondent,

Electro-Motive Division/General Motors
Corporation and Diesel Division of
General Motors of Canada,
Defendants-Respondents,

v.

West Bend Mutual Insurance Company and
Marlin Toy Products, Inc.,
Third-Party Defendants-Respondents.

Court of Appeals

*No. 2004AP2630. Oral argument January 18, 2006.
—Decided March 14, 2006.*

2006 WI App 58

(Also reported in 714 N.W.2d 232.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Brian D. Baird* and *Patrick D. McNally* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee. There was oral argument by *Joseph P. Mascovich*.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael J. Gonring* and *Keith A. Bruett* of *Quarles & Brady, LLP*, Milwaukee,

and *Timothy S. Coon* of *Eckert Seamans Cherin & Mellott, LLC*, Pittsburgh, Pennsylvania. There was oral argument by *Thomas J. Sweeney, Jr.*

On behalf of the defendant-third-party plaintiff-respondent, the cause was submitted on the brief of *Christopher P. Riordan* and *Maureen Hegarty Kanter* of *von Briesen & Roper, S.C.*, Milwaukee. There was oral argument by *Christopher P. Riordan*.

On behalf of the third-party defendants-respondents, the cause was submitted on the brief of *Terry J. Booth* of *Piper & Schmidt*, Milwaukee. There was oral argument by *Terry J. Booth*.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Union Pacific Railroad Company appeals from orders entered dismissing its contribution/indemnification action against Motive Equipment, Inc. (MEI) and Electro-Motive Division/ General Motors Corporation and Diesel Division of General Motors of Canada (GM). Union Pacific contends the trial court erred in granting summary judgment in favor of GM and MEI on the basis that the economic loss doctrine applied and the action was preempted by federal law, i.e., the Federal Employers Liability Act, (FELA) 45 U.S.C. §§ 51–60 and the Locomotive Inspection Act, (LIA) 49 U.S.C. §§ 20701–703. Because we conclude that Union Pacific's claim is preempted by federal law, we affirm.

## BACKGROUND

¶ 2. On January 1, 1999, Douglas Butolph, a Union Pacific locomotive engineer, was operating unit number 8172, a diesel locomotive manufactured by GM, on a westbound coal train. Butolph noticed a strange

odor and smoke in the cab, which started to burn his throat. He attempted to open all the windows to clear the odor, but that only made the odor worse. The cause of the smoke and odor was a fire in the refrigerator in the locomotive cab.

¶ 3. Butolph called the dispatcher and received permission to take the next available siding. He stopped the train there and exited the vehicle. He was exposed to the odor for about fifteen minutes before he was able to get off the locomotive. As a result, Butolph suffered severe rhino sinusitis and vocal cord dysfunction. Butolph filed suit against Union Pacific in Colorado. He alleged that Union Pacific failed to provide a reasonably safe place to work, and thus was negligent under the FELA, and the LIA. Following discovery and mediation, Union Pacific settled Butolph's claim for $350,000.

¶ 4. Union Pacific then filed this action against GM, from whom it bought the locomotive, and MEI, who manufactured the refrigerator, for contribution and indemnity.[1] It alleged that it paid more than its fair share of the parties' joint liability. Union Pacific alleged that GM had improperly installed the refrigerator and was liable for negligence, strict products liability, breach of warranties and breach of the indemnification provisions of the sale contract for the locomotive. MEI was the manufacturer of the refrigerator that malfunctioned and started the fire. Union Pacific alleged that MEI was liable for negligence, strict products liability, and breach of warranties.

---

[1] MEI brought in Marlin Toy Products, Inc. and its insurer as third-party defendants. Marlin was dismissed on the same grounds as the other parties, although it asserted a different basis in its summary judgment motion. Because we are affirming the trial court on preemption grounds, it is not necessary for us to address Marlin's argument at the trial court level or on appeal.

¶ 5. GM and MEI filed motions seeking summary judgment. GM asserted that the LIA preempted any tort claims against it and its warranty disclaimers eliminated any non-tort claims. GM also asserted there was no proof of causation. MEI asserted similar arguments and contended that the claim was barred by the economic loss doctrine.

¶ 6. The trial court granted GM's and MEI's motions for summary judgment, holding that Union Pacific's claims were preempted by federal law, that its damages were "purely economic" and that its theories of negligence, strict liability and breach of warranty were barred by the economic loss doctrine. Union Pacific now appeals.

## DISCUSSION

¶ 7. This case arises from a grant of summary judgment. Our standard of review in such circumstances is well known. We review summary judgments independently, employing the same methodology as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We do value any analysis that the trial court has placed in the record. We will affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (2003–04).

██

¶ 8. The dispositive issue in this case is whether Union Pacific's claim is preempted by federal law. We conclude that it is, and therefore affirm the trial court for the reasons that follow.

¶ 9. In 1926, the United States Supreme Court held that the LIA (sometimes referred to as the Boiler Inspection Act) "extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." *Napier v. Atlantic Coast Line R.R. Co.*, 272 U.S. 605, 611 (1926). Congress intended federal law to occupy the entire field of locomotive safety and equipment, "particularly as it relates to injuries suffered by railroad workers in the course of their employment." *Law v. General Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997). In *Law*, the Ninth Circuit articulated the reason preemption was necessary:

> This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines. Locomotives are designed to travel long dis-tances, with most railroad routes wending through interstate commerce. The virtue of uniform national regulation "is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state."

*Id.* (citations omitted). Although cases are repeatedly brought challenging the status of federal preemption in this area, the majority of courts across the nation hold firm to the *Napier* principle that federal law preempts all state claims, leaving no area within which states may act. *See, e.g., Darby v. A-Best Prods. Co.*, 811 N.E.2d 1117 (Ohio 2004); *In re W. Virginia Asbestos Litig.*, 592 S.E.2d 818 (W. Va. 2003); *General Motors Corp. v. Kilgore*, 853 So. 2d 171 (Ala. 2002); *Forrester v. American Dieselelectric, Inc.*, 255 F.3d 1205 (9th Cir. 2001); *Furlough v. Union Pacific R.R. Co.*, 766 So. 2d 751 (La. App. 2000); *Seaman v. A.P. Green Indus., Inc.*,

707 N.Y.S.2d 299 (N.Y. Sup. Ct. 2000); *Scheiding v. General Motors Corp.*, 993 P.2d 996 (Cal. 2000); *Norfolk S. Ry. Co. v. Denson*, 774 So. 2d 549 (Ala. 2000); *Oglesby v. Delaware & Hudson Ry. Co.*, 180 F.3d 458 (2d Cir. 1999); *Carter v. Consolidated Rail Corp.*, 709 N.E.2d 1235 (Ohio App. 1998); *Springston v. Consolidated Rail Corp.*, 130 F.3d 241 (6th Cir. 1997); *Key v. Norfolk S. Ry. Co.*, 491 S.E.2d 511 (Ga. App. 1997); *In re Train Collision at Gary, Indiana*, 670 N.E.2d 902 (Ind. App. 1996); *Southern Pac. Transp. Co. v. Public Util. Comm'n*, 9 F.3d 807 (9th Cir. 1993); *Burlington N. R.R. v. City of Connell*, 811 F. Supp. 1459 (E.D. Wash. 1993); *Burlington N. R.R. Co. v. State of Montana*, 805 F. Supp. 1522 (D. Mont. 1992); *Smith v. Norfolk & W. Ry. Co.*, 776 F. Supp. 1335 (N.D. Ind. 1991); *Missouri Pac. R.R. v. Railroad Comm'n of Texas*, 850 F.2d 264 (5th Cir. 1988); *King v. Southern Pac. Transp. Co.*, 855 F.2d 1485 (10th Cir. 1988); *Green v. River Terminal Ry. Co.*, 585 F. Supp. 1019 (N.D. Ohio 1984), *aff'd*, 763 F.2d 805 (6th Cir. 1985); *Marshall v. Burlington N., Inc.*, 720 F.2d 1149 (9th Cir. 1983); *Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n*, 536 F. Supp. 653 (E.D. Pa.), *aff'd mem.*, 696 F.2d 981 (3d Cir. 1982), *aff'd*, 461 U.S. 912 (1983); *New York, C. & ST. L.R.R. Co. v. Van Dorp*, 173 N.E. 445 (Ohio App. 1930); *Pennsylvania R.R. Co. v. Pelsor*, 168 N.E. 249 (Ind. App. 1929).

¶ 10. Union Pacific argues that the holdings in these cases do not apply to the facts and circumstances of this case. It contends that because the instant case involves allegations that third parties' actions contributed to Butolph's injuries, *Engvall v. Soo Line Railroad Co.*, 632 N.W.2d 560 (Minn. 2001) applies, and as a result, GM and MEI should share in the financial responsibility for the damages Butolph sustained. We cannot agree.

¶ 11. Union Pacific's contribution claims are premised on Butolph's underlying claim. Thus, Union Pacific can recover from GM and MEI, only if Butolph could have recovered from GM and MEI himself. *See Kafka v. Pope*, 194 Wis. 2d 234, 242–43, 533 N.W.2d 491 (1995). If Butolph's claim is preempted as to GM and MEI, then Union Pacific's claim must be preempted as well.

■

¶ 12. Federal law preempts any state action that would affect "the design, the construction, and the material" of locomotives. *Napier*, 272 U.S. at 611. Butolph's claim involved the negligent design of a refrigerator installed on the locomotive. There is simply no way to conclude that Butolph's claim is something different from that which is federally preempted. If Butolph attempted to file a state claim against GM or MEI, we have no doubt that his attempt would have failed. His remedy was limited to filing a claim against Union Pacific alleging violations of federal law. As the court in *Law* aptly explained:

> Imposing tort liability on railroad equipment manufacturers would [affect the design, the construction and the material of locomotives] by forcing them to conform to design and construction standards imposed by the states. This would transfer the regulatory locus from the Secretary of Transportation to the state courts—a result the [federal law] was clearly intended to foreclose.

114 F.3d at 911–12 (footnote omitted).

¶ 13. Thus, we are not persuaded by Union Pacific's attempt to distinguish the preemptability of the instant case from those referenced above. Further, we are not persuaded that the rationale expressed in the *Engvall* case should be adopted. In *Engvall*, an

employee of Soo Line Railroad sued the railroad for injuries sustained during his course of employment. 632 N.W.2d at 563. The railroad then filed a third-party complaint against the manufacturer of the locomotive alleging that a handbrake was poorly designed and that the manufacturer was liable under state common law theories and therefore would be liable to the railroad under contribution and/or indemnity law. *Id.* at 563–66. The manufacturer filed a motion seeking summary judgment on the theory that Soo Line's claims against it were preempted by federal law. *Id.* The Minnesota Supreme Court denied the motion, concluding that Soo Line's contribution claim was not preempted, distinguishing *Law* and instead relying on several other cases, which addressed third-party liability. *Id.* at 571. The court held that the field preempted by the LIA does not include state common law actions based on a violation of the LIA. *Id.* The court held that a negligence *per se* claim based on a violation of LIA would not have any direct or substantial effect on the field of locomotive design, construction and material, and therefore did not fall within the preempted field. *Id.* at 570. The court further reasoned that because no state standard was imposed, there was no danger of undermining the goal of nationwide uniformity of railroad operating standards. *Id.* at 570–71. The reasoning of the Minnesota Supreme Court reflects adoption of a public policy unique, it appears, to Minnesota, among the many courts that have considered the preemption issue. We are not persuaded that the reasoning applied in *Engvall* should apply here.

¶ 14. Accepting the reasoning in *Engvall* would undermine congressional intent as Congress specifically did not provide for a private right cause of action

for a violation of LIA and specifically drafted FELA as only applying to carriers and *not* manufacturers. *See Napier*, 272 U.S. at 611–13. Congress drafted FELA to operate as a general negligence statute, which allows railroad employees who are injured during the course of their employment to recover from their employers, if their employers were negligent. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 140 (2003). The employer's duty is nondelegable under FELA. *See Ellison v. Shell Oil Co.*, 882 F.2d 349, 353 (9th Cir. 1989). The LIA " 'imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate . . . without unnecessary peril to life or limb.' " *Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 485 (1943) (citations omitted). The United States Supreme Court has characterized LIA as an amendment to FELA "dispens[ing], for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence; and making proof of such violations . . . effective to show negligence as a matter of law." *Urie v. Thompson*, 337 U.S. 163, 189 (1949). LIA, therefore, serves the purpose of facilitating an employee's ability to recover under FELA. *Id.* LIA applies to manufacturers, but FELA does not. *See* 49 U.S.C. § 21302 (1994); 49 CFR 229.7(b) (2000). LIA, however, does not create any private right of action for injured employees. *Id.*; *Law*, 114 F.3d at 912.

¶ 15. Further, the cases relied on by *Engvall* do not support its holdings. Rather, the cases referred to either: (1) involve the Safety Appliance Act, which does not carry the same broad preemptive effect as the LIA, *see Crane v. Cedar Rapids & I.C. Ry. Co.*, 395 U.S. 164 (1969); or (2) constitute a situation where the

third-party was the owner of the object or property that caused the accident; *see, e.g., Ellison*, 882 F.2d 349.

¶ 16. Based on the foregoing, we conclude that we cannot follow the *Engvall* case. To do so, based on the facts presented in the instant case, would result in a clear violation of congressional intent to occupy the entire field of regulating locomotive equipment. *Napier*, 272 U.S. at 607. Butolph's claims here fall squarely into federal law governing design, construction and material of every part of the locomotive and tender and all appurtenances. *See id.* at 611.

¶ 17. Union Pacific does not dispute that the refrigerator and its design ventilation louvers were appurtenances of the locomotive. It argues, neverthe-less, that GM and MEI had a duty to make it safe to operate without unnecessary danger of personal injury. It continues that it would be unfair for it to shoulder the entire blame for the damages paid to Butolph. Although this court can sympathize with Union Pacific's position, we are bound to apply preemption rules. Congress has established the field of locomotive equipment and safety as one which requires broad preemptive effect. Thus, any claim, including one alleg-ing contribution/indemnification, will be preempted by federal law if the subject matter of the claim falls within the preempted field. The subject matter of Union Pacific's claim involves an alleged design defect of a refrigerator and its ventilation louvers installed on one of its locomotives. This matter clearly falls within the preempted field.

¶ 18. Union Pacific also argues that its claim should not be preempted because it will not affect nationwide uniformity of locomotive equipment or safety. It contends it is simply trying to assert liability against GM and MEI for the same LIA violation for

which it was held responsible. This argument, however, is not material to our analysis. Federal law applies to preempt any common law claims. Accordingly, the only way Union Pacific can assert claims against GM and MEI is if the federal statutory scheme permits such action.

¶ 19. Based on the foregoing analysis, we conclude that Union Pacific's claims against GM and MEI are preempted by federal law. Accordingly, the trial court did not err in granting summary judgment in this case. Because we have decided the case on the doctrine of preemption, it is not necessary for us to address whether the economic loss doctrine applies, or any other peripheral issues raised by the parties. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

*By the Court.*—Orders affirmed.