IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BNSF RAILWAY COMPANY, a Delaware corporation authorized to do business in Arizona, *Cross-Claimant/Appellant*,

*v.*

SEATS INCORPORATED, a Wisconsin corporation, *Cross-Defendant/Appellee*.

No. 1 CA-CV 14-0002

FILED 5-5-2015

Appeal from the Superior Court in Coconino County
No. S0300CV201000845
The Honorable Cathleen Brown Nichols, Judge

**REVERSED AND REMANDED**

COUNSEL

Thorpe Shwer, PC, Phoenix
By William L. Thorpe, Bradley D. Shwer, Kristin Paiva
*Counsel for Appellant*

Bowman and Brooke, LLP, Phoenix
By Curtis J. Busby, Amanda E. Heitz
*Counsel for Appellee*

Vorys Sater Seymour and Pease, LLP, Columbus, OH
By J. Scott Jamieson
*Co-Counsel for Appellee*

---

**OPINION**

---

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Peter B. Swann joined.

---

C A T T A N I, Judge:

¶1 This appeal addresses whether the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq.*, preempts a state-law claim by a railway company alleging that a seat manufacturer failed to comply with the federal standard of care for manufacturing and installing locomotive seats. We conclude that although LIA establishes uniform federal safety regulations and preempts claims premised on a state-specific standard of care, it does not preempt claims based on the federal standard. Accordingly, we vacate the order of dismissal in this case and remand for further proceedings consistent with this decision.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Jeffery McKinney, a train conductor employed by BNSF Railway Company ("BNSF"), filed a complaint under the Federal Employees Liability Act ("FELA") alleging, among other claims, that he sustained injuries due to an unsafe seat on a BNSF locomotive. McKinney's claims against BNSF are based on a LIA violation. McKinney amended the complaint to join Seats Inc. ("Seats"), the manufacturer of the allegedly defective seat, as a defendant, asserting claims for products liability and negligence *per se*. BNSF subsequently filed cross-claims against Seats for indemnification and contribution, if McKinney were to recover from BNSF.

¶3 Seats moved to dismiss McKinney's complaint and BNSF's cross-claims under Arizona Rule of Civil Procedure 12(b)(6) on the basis that the claims were preempted by federal law. After briefing and argument, the superior court granted Seats' motion, holding that LIA preempts the claims at issue.

¶4 The superior court certified the judgment for Seats as final under Arizona Rule of Civil Procedure 54(b), and BNSF timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution

and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and -2101(A)(1).[1]

## DISCUSSION

¶5        BNSF contends that the superior court erred by dismissing its indemnification and contribution claims, arguing that these state-law claims are not preempted by LIA because they are premised on a federal standard of care rather than a state-specific standard. We agree.

### I.      Standard of Review.

¶6        Dismissal is appropriate under Rule 12(b)(6) only if "as a matter of law [the] plaintiff[] would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.,* 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998). We review dismissal under Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8, 284 P.3d 863, 867 (2012).

### II.     Preemption of BNSF's Indemnification and Contribution Claims.

¶7        Whether BNSF may assert claims for indemnification and contribution against Seats turns on whether LIA preempts all state-law claims or only those based on state-specific (rather than the federally promulgated) standards of care.

#### A.      Statutory and Regulatory Background.

¶8        LIA provides that "a locomotive . . . and its parts and appurtenances" must be "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1). Under LIA, the Federal Railroad Administration has promulgated regulations on the governing standards of care, including a requirement that locomotive seats "be securely mounted and braced." 49 C.F.R. § 229.119(a). LIA's safety standard applies both to railroad carriers and to manufacturers providing locomotive components. *See Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1261, 1268–69 (2012).

¶9        LIA does not provide a private right of action to employees injured by defective locomotive equipment. *Urie v. Thompson,* 337 U.S. 163, 188 (1949). Instead, an injured employee may bring a FELA claim against

---

[1]      Absent material revisions after the relevant date, we cite a statute's current version.

the railroad alleging a LIA violation, proof of which establishes the railroad's negligence as a matter of law. *See* 45 U.S.C. §§ 51, 56 (establishing right of action for employee to recover damages caused by railroad's negligence); *Urie*, 337 U.S. at 189 (stating that LIA violation constitutes negligence *per se* for purposes of employee's FELA claim against railroad). Accordingly, LIA, in conjunction with FELA, "impos[es] on interstate railroads an absolute and continuing duty to provide safe equipment" and has the "purpose and effect of facilitating employee recover[y]." *Urie*, 337 U.S. at 188–89 (citations and internal quotation marks omitted).

### B.    Preemptive Effect of LIA.

**¶10**        Under the Supremacy Clause of the United States Constitution, federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Although the Supremacy Clause grants Congress authority to preempt state law, federal enactments are presumed not to override the states' traditional police powers unless Congress clearly manifests an intent to do so. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). Even where a statute does not expressly provide for preemption, "a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively or when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). The preemptive effect of LIA falls into the former category, known as "field preemption." *See Kurns*, 132 S. Ct. at 1266; *see also Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.* ("*Knoedler*"), 781 F.3d 656, 661 (3d Cir. 2015).

**¶11**        Two United States Supreme Court cases have addressed field preemption under LIA. In *Napier v. Atlantic Coast Line Railroad Co.*, the Court considered challenges to a Georgia statute requiring that locomotive fireboxes be equipped with an automatic door, and to a Wisconsin statute requiring locomotives to have cab curtains. 272 U.S. 605, 607 (1926). The Court found that LIA was "intended to occupy the field" pertaining to "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Id.* at 611, 613. Under LIA, only the federal agency tasked with implementing LIA could "set[] the standard" for a locomotive's proper operating condition, and any "requirements by the states are precluded, however commendable or however different their purpose." *Id.* at 612–13.

**¶12**        In *Kurns*, the Court rejected as preempted state common-law design defect and failure-to-warn claims against the manufacturer of

locomotive equipment containing asbestos. 132 S. Ct. at 1264, 1269–70. Although the claims in *Kurns* were based on state common-law duties rather than on state legislation, the Court concluded that "state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by LIA." *Id.* at 1269–70.

¶13 In the instant case, the superior court concluded that, under *Kurns* and *Napier*, LIA preempted BNSF's state-law cross-claims for indemnification and contribution premised on an allegedly defective piece of locomotive equipment. But here, unlike in *Kurns* and *Napier*, the claims at issue do not rely on a state-specific standard of care, but rather on standards prescribed under LIA itself. Thus, the concerns underlying preemption (primarily the need for national uniformity) are not implicated. *See Knoedler*, 781 F.3d at 666 ("Preemption allows railroad carriers to abide by a single set of national equipment regulations, instead of having to meet different standards and, potentially, to change equipment when a train crosses state lines.").

¶14 We find persuasive the analysis in *Knoedler*, in which the Third Circuit concluded that LIA did not preempt a railway company's state-law contribution and indemnification claims—similar to those at issue here—against a locomotive seat manufacturer because the claims were premised on LIA's standards of care. The Third Circuit rejected the argument that *Kurns* and *Napier* mandate preemption of all state claims regarding the design and manufacture of locomotive equipment:

> [T]hose decisions did not speak so broadly. They were explicit in holding, and only holding, that a state may not impose its own duties and standards of care on the manufacture and maintenance of locomotive equipment. *See Kurns*, 132 S. Ct. at 1269 ("We therefore conclude that state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by LIA."); *Napier*, 272 U.S. at 613 ("[R]equirements by the states [regarding locomotive equipment] are precluded, however commendable or however different their purpose."). The question left unanswered by *Napier* and *Kurns* is whether LIA preempts a state claim that is premised on a violation of the duties and standards of care stemming from LIA itself; in other words, whether a state claim based on a federal standard of care is preempted. We conclude that it is not.

781 F.3d at 662.

¶15     The Third Circuit noted that "[w]hile there is no Supreme Court authority exactly on point, there are plenty of strong hints that such an avenue to relief is not foreclosed." *Id.* The Third Circuit cited in particular to the Supreme Court's holdings "in other statutory contexts that violations of federal law can be redressed through state common-law claims." *Id.* For example, in *Silkwood v. Kerr-McGee Corp.*, the Supreme Court concluded that, even though "the federal government has occupied the entire field of nuclear safety concerns," a state-law remedy based on a violation of the Atomic Energy Act is not preempted. 464 U.S. 238, 249, 258 (1984) (citation omitted). Additionally, the Court has similarly permitted state-law claims as a means to redress federal violations in the context of other railroad safety laws. For example, in *Crane v. Cedar Rapids & Iowa City Railway Co.*, the Supreme Court stated that, because the Safety Appliance Act ("SAA"), 49 U.S.C. § 20301 *et seq.*, did not create a federal cause of action, railroad employees could seek a remedy for an SAA violation through FELA, but a "nonemployee must look for his remedy to a common law action in tort, which is to say that he must sue in a state court, in the absence of diversity, to implement a state cause of action." 395 U.S. 164, 166 (1969); *see also Tipton v. Atchison, Topeka & Santa Fe Ry. Co.*, 298 U.S. 141, 147–48 (1936) (recognizing that the SAA "leave[s] the genesis and regulation of such action [for breach of the SAA] to the law of the states"). Thus, although "[t]he federal statutes create the right; the remedy [as provided through common-law tort actions] is within the state's discretion." *Breisch v. Cent. R.R. of N.J.*, 312 U.S. 484, 486 (1941).

¶16     In *Engvall v. Soo Line Railroad Co.*, the Minnesota Supreme Court similarly held that LIA does not preempt a railroad company's claims against an equipment manufacturer seeking indemnification and contribution for liability resulting from an injury to an employee when these state-law claims are premised on a LIA violation. 632 N.W.2d 560, 569–71 (Minn. 2001). The court reasoned that, because a federal standard of care was applied, "there [was] no danger of undermining the goal of nationwide uniformity of railroad operating standards, the primary rationale for holding state law claims preempted." *Id.* at 570–71.

¶17     Seats notes that *Engvall* has been widely criticized and that a number of jurisdictions have rejected its holding. *See Roth v. I & M Rail Link, L.L.C.*, 179 F. Supp. 2d 1054, 1062 (S.D. Iowa 2001) (rejecting *Engvall*); *Union Pac. R.R. Co. v. Motive Equip. Inc.*, 714 N.W.2d 232, 236–37, ¶¶ 13–16 (Wis. Ct. App. 2006) (same); *Wright v. Gen. Elec. Co.*, 242 S.W.3d 674, 680 (Ky. Ct. App. 2007) (rejecting *Engvall* and stating that LIA preemption of all state common-law tort claims "overwhelmingly represent[s] the majority rule"). But as the Third Circuit noted in *Knoedler*, "the one Court we must attend

to most carefully, the Supreme Court, [has] favorably cited *Engvall* twice in [*Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135 (2003),] as an example of a case where a railroad was able to recoup its FELA losses through state-law indemnification and contribution claims."  781 F.3d at 665–66 (citing *Ayers*, 538 U.S. at 162 n.21, 165 n.23).

**¶18**　　　In *Knoedler*, the Third Circuit further observed that "Congress's silence with respect to state-law remedies 'takes on added significance in light of [its] failure to provide any federal remedy' for LIA violations."  781 F.3d at 664 (quoting *Silkwood*, 464 U.S. at 251).  If all state-law claims—even those premised on LIA's standard of care—are preempted, "railroads would be left with no remedy, no matter how obvious or egregious the liability of an equipment supplier."  *Id.*  "'It is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct.'  And yet that would be the result if [the railroad's] state law indemnification and contribution claims are preempted."  *Id.* at 665 (quoting *Silkwood*, 464 U.S. at 251).

**¶19**　　　We conclude that, consistent with FELA, if an employer has been found liable in a FELA action, the employer should be permitted to spread the costs of the injury to other responsible parties.  *See Ayers*, 538 U.S. at 165 ("[I]t accords with the FELA's overarching purpose to require the employer to bear the burden of identifying other responsible parties and demonstrating that some of the costs of the injury should be spread to them."); *see also* A.R.S. § 12-2506(E) (authorizing a defendant found liable under FELA to pursue a contribution claim against a third-party tortfeasor).  Thus, BNSF should be permitted to pursue claims against Seats.[2]

---

[2]　　　We express no view of the merits of BNSF's claims.

## CONCLUSION

**¶20** Because BNSF seeks to apply a federal standard of care under LIA, its claims for indemnification and contribution are not preempted. We therefore vacate the superior court's order dismissing BNSF's claims and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama