# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1832

Steven Duane Auers, personally, and as trustee
for the next of kin of Karen Auers, deceased,
Respondent,

vs.

Progressive Direct Insurance Company,
Appellant.

**Filed April 25, 2016**
**Reversed**
**Rodenberg, Judge**

Kanabec County District Court
File No. 33-CV-14-286

James A. Lavoie, Benjamin A. Lavoie, Lindell & Lavoie, LLP, Minneapolis, Minnesota
(for respondent)

Dyan J. Ebert, Laura A. Moehrle, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for
appellant)

Paul D. Peterson, Jason L. DePauw, Harper & Peterson, P.L.L.C., Woodbury, Minnesota
(for amicus curiae Minnesota Association for Justice)

Considered and decided by Hooten, Presiding Judge; Larkin, Judge; and

Rodenberg, Judge.

## S Y L L A B U S

1. Pursuant to *Swanson v. Brewster*, 784 N.W.2d 264 (Minn. 2010), a

negotiated discount of medical expenses is a collateral source subject to offset under

Minn. Stat. § 548.251 (2014).

2.     A subrogee that has negotiated a discount of medical expenses may not assert a subrogation right for the discount under *Swanson*, and the subrogation right is limited to the amount of the subrogee's payment.

3.     An injured plaintiff who purchases the subrogation interest of a health-insurance carrier is not entitled to recover the *Swanson* collateral-source offset under Minn. Stat. § 548.251 in his personal injury case.

## O P I N I O N

**RODENBERG**, Judge

On appeal from a grant of summary judgment in favor of respondent Steven Duane Auers in his capacity as trustee, appellant Progressive Direct Insurance Company argues that the district court erred in determining that a negotiated discount is not a collateral source subject to offset under Minn. Stat. § 548.251 where the injured party's health-insurance carrier paid a reduced amount to satisfy the charges of the medical providers, claimed a subrogation lien for the amount it paid, and then assigned that lien to the injured party. Because a negotiated discount is a collateral source subject to offset under the statute and *Swanson*, 782 N.W.2d at 265, and because a subrogation right cannot exceed the amount that was paid by the subrogee, we reverse.

## FACTS

The facts underlying this appeal are undisputed. In June 2012, Karen Auers was injured in a car crash. At the time of the crash, Ms. Auers was insured by appellant under a policy that included underinsured motorist (UIM) benefits of up to $100,000. As a

2

result of the crash, Ms. Auers incurred approximately $178,083.44 in medical expenses.[1] Appellant paid $20,000 of those bills by way of no-fault medical benefits. The remaining medical expenses of $158,083.44 were satisfied by Ms. Auers's health insurance carrier, Blue Cross and Blue Shield of Minnesota (BCBS). BCBS negotiated approximately $85,869.59 in discounts with her medical providers. BCBS paid $72,216.85 to the providers and asserted a lien in that amount.

In early March 2013, Ms. Auers received a settlement offer from the tortfeasor's insurer for the liability insurance policy limit of $100,000. Ms. Auers settled with the tortfeasor for $100,000, after notifying appellant of its right to substitute its draft for the policy-limits offer to preserve its right to recover from the tortfeasor, pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn. 1983), *superseded by statute on other grounds*, Minn. Stat. § 65B.49, subd. 4a (2014). Ms. Auers died shortly thereafter for reasons unrelated to the crash.

Respondent, the surviving husband of Ms. Auers, was appointed trustee for her heirs and next of kin in April 2013. In June 2013, respondent obtained a "Release of Subrogation Interest and Claim" from BCBS, after BCBS accepted $5,000 in exchange for an assignment of its right of subrogation, "to the extent permitted under *Swanson v. Brewster*," to respondent.

Respondent then sued appellant, seeking UIM benefits for damages sustained by Ms. Auers exceeding the tortfeasor's liability-insurance limits. Both parties moved for summary judgment, disputing only the legal effect of the BCBS assignment of its right of

---

[1] This amount was by stipulation.

3

subrogation. Respondent argued that the district court was prevented from reducing respondent's recoverable damages by the negotiated discount because respondent had purchased and asserted BCBS's subrogation rights, and that, because a subrogation right had been asserted, the collateral-source statute, Minn. Stat. § 548.251, exempted both the amount paid by BCBS and the negotiated discount from the collateral-source reduction. Appellant argued that respondent's purchase of BCBS's subrogation rights allowed respondent to recover the amount of the subrogation interest of BCBS, but that the amount of the negotiated discount remained a collateral source to be deducted from the award.

The district court granted summary judgment for respondent. Because the recoverable damages exceeded the limit of the tortfeasor's liability insurance, the district court concluded that the tortfeasor was underinsured, that respondent was entitled to UIM benefits from appellant, and that the proper amount of UIM benefits was $75,294. This appeal followed.

**ISSUE**

Is the value of a discount negotiated by a health-insurance carrier properly excluded from collateral-source offsets under Minn. Stat. § 548.251 where the subrogation claim of the health insurance carrier that negotiated the discount has been assigned to the personal-injury plaintiff?

**ANALYSIS**

We review de novo a district court's grant of summary judgment, determining "whether the district court properly applied the law and whether . . . genuine issues of

4

material fact . . . preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). No genuine issue exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted). Here, the parties agree that there are no disputed fact issues and that the issue on appeal is one of law that is properly reviewed de novo.

Under Minnesota's "survival statute," an injured decedent's heirs and next of kin are limited to recovering special damages arising from an injury when the death is caused by reasons unrelated to those injuries. Minn. Stat. § 573.02, subd. 2 (2014). "'Special damages' are those damages to which an exact dollar amount can be assigned, such as medical expenses or lost wages to date of death." *Deal v. Northwood Children's Home Soc'y, Inc.*, 608 N.W.2d 922, 925 n.1 (Minn. App. 2000), *review denied* (Minn. June 13, 2000). Here, respondent seeks to recover only the past medical expenses Ms. Auers incurred due to the crash. The claim against the at-fault driver was settled for $100,000 before Ms. Auers died. The total of her medical bills, before any discount, was stipulated to be $178,083.44.

To prevail on a UIM claim, the plaintiff must establish recoverable damages greater than the tortfeasor's liability limit. *See Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 601 (Minn. 2001) ("UIM benefits only become available if the tortfeasor's policy limits are less than the [recoverable] damages sustained by the injured UIM policyholder."). In determining whether an insured's recoverable damages exceed the tortfeasor's liability limits, a court must first reduce the damages award by the collateral-

5

source benefits received by the injured person before the verdict or settlement. Minn. Stat. § 548.251.

"When an individual or entity other than a tortfeasor compensates a tort plaintiff for his or her injuries, the plaintiff has received a 'collateral-source benefit.'" *Swanson*, 784 N.W.2d at 268. Collateral sources are defined, in relevant part, as payments "related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to . . . health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage." Minn. Stat. § 548.251, subd. 1.

Minn. Stat. § 548.251, subd. 2 provides:

> In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:
> (1) *amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted;* and
> (2) amounts that have been paid, contributed, or forfeited by, or on behalf of, the plaintiff or members of the plaintiff's immediate family for the two-year period immediately before the accrual of the action to secure the right to a collateral source benefit that the plaintiff is receiving as a result of losses.

(Emphasis added). "The court shall reduce the award by the amounts determined under subdivision 2, clause (1), and offset any reduction in the award by the amounts determined under subdivision 2, clause (2)." *Id.*, subd. 3(a).

In this case, and in order to recover UIM benefits, respondent was required to prove that the amount of past medical expenses, after collateral-source offsets, was greater than the $100,000 Ms. Auers had already received from the settlement with the tortfeasor. If the amount of recoverable medical expenses, after offsets, is less than $100,000, then Ms. Auers has been fully compensated by the earlier tort settlement and the heirs and next of kin are not entitled to UIM benefits from appellant.

The purpose of the collateral-source statute "is to prevent double recoveries by plaintiffs." *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn. 1990). "Procedurally, the statute prevents double recovery through a . . . reduction . . . of a plaintiff's award." *Swanson*, 784 N.W.2d at 269. Because the issue here involves application of the collateral-source statute to undisputed facts, our review is de novo. *See Krutsch v. Walter H. Collin GmBh Verfahrenstechnik Und Maschinenfabric*, 495 N.W.2d 208, 214 (Minn. App. 1993) (stating that "[we] need not give deference to the [district] court's decision" when applying statutes to undisputed facts), *review denied* (Minn. Mar. 22, 1993).

The district court accepted respondent's argument that respondent's purchase of BCBS's subrogation right meant that neither the amount paid by BCBS to the medical providers nor the negotiated discount are to be offset against the recoverable damages under the collateral-source statute. *See Swanson*, 784 N.W.2d at 265 (stating that

negotiated-discount amounts are "amounts a plaintiff is billed by a medical provider but does not pay because the plaintiff's insurance provider negotiates a discount on the plaintiff's behalf"). Because the parties stipulated that Ms. Auers incurred $178,083.44 in medical expenses resulting from the crash, the district court calculated Ms. Auers's recoverable medical special damages by deducting only the no-fault medical benefits from $178,083.44, and making no other offset under Minn. Stat. § 548.251. Since that amount exceeds the tortfeasor's $100,000 policy limit, the district court determined that respondent, as trustee for the heirs and next of kin of Ms. Auers, is entitled to recover UIM benefits. Respondent, and amicus curiae Minnesota Association for Justice, rely on their interpretation of *Swanson* to argue that BCBS had a subrogation right to both the medical expenses it paid and the discount amount, that the health insurer assigned this right to respondent, and that the full amount falls within the exception in Minn. Stat. § 548.251, subd. 2(1).

Appellant argues that the negotiated-discount amount by BCBS is a collateral source to be offset under the statute because respondent did not have a subrogation right to recover that amount, and respondent could not have received from BCBS a right to recover or assert a lien for the amount of the discount. *See* Minn. Stat. § 548.251, subd. 2 (excluding from collateral-source deductions the "amounts of collateral sources . . . for which a subrogation right has been asserted"). Appellant points to footnote four of the Minnesota Supreme Court's opinion in *Swanson* as indicating that only the "amounts paid" by a health insurer may be recovered by way of a subrogation lien. *Swanson*, 784 N.W.2d at 267 n.4.

8

Respondent and amicus curiae's arguments relying on *Swanson* ignore the important difference between a subrogation lien and a collateral source. "Subrogation 'is the substitution of another person in place of the creditor to whose rights he or she succeeds in relation to the debt, and gives to the substitute all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted.'" *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 5 (Minn. 2012) (quoting 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 222:5 (3d ed. 1995)). Subrogation in the insurance context "involves the substitution of an insurer (subrogee) to the rights of the insured (subrogor)." *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 76 (Minn. 1997). "*Upon payment of a loss*, the insurer is subrogated in *a corresponding amount* to the insured's right of action against any third party whose wrongful conduct caused the loss." *RAM*, 820 N.W.2d at 5-6 (emphasis added). A subrogation lien is "an equitable lien impressed on moneys on the ground that they ought to go to the insurer." *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 368, 126 S. Ct. 1869, 1877 (2006) (citing 4 Palmer, *Law of Restitution* § 23.18(d), at 470).

Minn. Stat. § 548.251, relating to collateral sources, operates to prevent double recoveries while simultaneously protecting injured parties from undercompensation by ensuring that the total amount of collateral sources deducted from the award excludes "amounts plaintiff[s] must ultimately pay over to a subrogee." *Buck v. Schneider*, 413 N.W.2d 569, 572 (Minn. App. 1987).

Here, BCBS satisfied all of the claims of Ms. Auers's medical providers and acquired a subrogation claim for the amount it paid to the providers. BCBS was able to

negotiate a discount of some $85,869.59 of Ms. Auers's medical bills, and, therefore, could only assert a subrogation claim "in a corresponding amount" to its "payment of a loss," which was $72,216.85. *RAM*, 820 N.W.2d at 5-6. BCBS acknowledged as much in its written notice of its subrogation lien claim in October 2012, sent to Ms. Auers and identifying "[t]he new total of [BCBS's] subrogation interest [to be] $72,216.85."

Minn. Stat. § 548.251, subd. 2(1), exempts from collateral-source offsets the "amounts of collateral sources that have been paid for the benefit of the plaintiff . . . except those for which a subrogation right has been asserted." Negotiated discounts are collateral sources subject to offset under the collateral-source statute pursuant to *Swanson*, and such discounts remain a deductible collateral source under the statute despite the existence of a subrogation lien for amounts actually paid by a health-insurance carrier. The negotiated discounts are not *amounts* for which a subrogation right has been or could be asserted. Minn. Stat. § 548.251, subd. 2(1); *Swanson*, 784 N.W.2d at 265; *RAM*, 820 N.W.2d at 5-6.

Here, the *amount* for which BCBS asserted a lien was $72,216.85. No lien was asserted for the negotiated discount, nor could one have been asserted under Minnesota law. Respondent cites no authority, nor are we aware of any, that would permit a health insurer to negotiate a discount from medical providers and then assert a lien for *both* the amount it paid *and* the discounted amount. *Cf. Swanson*, 784 N.W.2d at 267 n.4 (noting that "State Farm purchased the subrogation right so that there would be no obstacle to securing a collateral-source reduction for *amounts paid* by HealthPartners on Swanson's behalf") (emphasis added). Respondent's theory, taken to its logical extreme, would

work an injustice on an injured plaintiff by allowing a subrogee to recover more of an injured person's tort claim than it had actually paid on the plaintiff's behalf. Such a result would be inconsistent with Minnesota tort law.

At oral argument, respondent argued that appellant's interpretation of the collateral-source statute might cause hardship for a plaintiff negotiating a global settlement of her claims when the total medical damages at the time of negotiations are unknown or changing. But that is not the situation here. The total of the medical bills of Ms. Auers caused by the crash is known with certainty. We apply *Swanson* and the plain language of Minn. Stat. § 548.251, subd. 2(1), to the stipulated facts. Whether the law as applied to a different set of facts might work a hardship on parties in different circumstances is not properly before us. To the extent that respondents think the law should be changed, those considerations are properly for the legislature or the supreme court. *KSTP-TV v. Ramsey County*, 806 N.W.2d 785, 788, 793 (Minn. 2011) (noting that appellate courts are limited to interpreting the plain language of the statute and that policy arguments are properly directed to the legislature); *Great River Energy v. Swedzinski*, 860 N.W.2d 362, 367 (Minn. 2015) (ruling that reviewing court may not rely on policy arguments to insert language into an otherwise plain-and-unambiguous statute).

We also note that, by purchasing the BCBS lien of $72,216.85 for a payment of $5,000, Ms. Auers recovered a net of $95,000 from the tortfeasor's $100,000 liability coverage despite BCBS and her own personal injury protection coverage having satisfied nearly $178,000 in medical bills. Respondent makes no claim, nor could he, that application of Minn. Stat. § 548.251 here leaves the heirs and next of kin

11

undercompensated for the damages properly recoverable under section 572.02, subdivision 2.

## D E C I S I O N

Where a health-insurance carrier negotiates a discount from the medical providers of an injured plaintiff and obtains a subrogation lien by virtue of payment of the negotiated amount, the subrogation lien is limited to the amount paid. The exception provided by Minn. Stat. § 548.251, subd. 2(1), for "amounts of collateral sources . . . for which a subrogation right has been asserted" applies only to the amounts actually paid by the carrier. The negotiated discounts remain collateral sources to be deducted from the injured party's verdict or settlement under Minn. Stat. § 548.251.

After application of Minn. Stat. § 548.251, the tortfeasor causing injury to Ms. Auers was not underinsured. Therefore, respondent is not entitled to recover uninsured motorist benefits.

**Reversed.**