BRATVOLD, Judge
In lawsuits that were later consolidated, three railroad employees sued their employer, respondent Soo Line Railroad Company d/b/a Canadian Pacific (Canadian Pacific), for personal injuries caused when their locomotive seats collapsed. Canadian Pacific filed a third-party complaint seeking contribution and/or indemnity from the seat manufacturers, appellants Knoedler Manufacturers Inc., and Knoedler Manufacturers Canada LTD (collectively, Knoedler). Knoedler filed a motion for summary judgment, arguing that Canadian Pacific's claims are preempted by federal law, specifically the Locomotive Inspection Act (the LIA). The district court disagreed, and denied Knoedler's motion.
Canadian Pacific settled with the three employees, and its contribution claims against Knoedler went to trial. The jury's special verdict determined that Knoedler and Canadian Pacific both violated the LIA and their violations caused each employee's injuries. The jury's special verdict also allocated fault, finding that Knoedler and Canadian Pacific were each 50% at fault for each employee's injuries. The district court adopted the jury's special verdict, and based on its earlier finding that Canadian Pacific's settlements with the employees were reasonable, the district court directed entry of a judgment in Canadian Pacific's favor for half of the total settlement amount.
Canadian Pacific then moved to amend the judgment to add prejudgment interest under Minn. Stat. § 549.09, subd. 1. Over Knoedler's opposition, the district court awarded prejudgment interest. At Canadian Pacific's request, the district court agreed to allow further briefing on how to compute the interest. The district court concluded that, under section 549.09, Canadian Pacific was entitled to prejudgment interest from the date that it commenced its consolidated third-party action against Knoedler. The district court directed entry of an amended judgment that included $110,737 in prejudgment interest.
Knoedler raises three issues on appeal. First, Knoedler argues that Canadian Pacific's contribution and/or indemnification claims are wholly preempted by federal law, therefore, the district court erred in *646 denying Knoedler's motion for summary judgment. Second, Knoedler argues that Canadian Pacific is not entitled to prejudgment interest under Minn. Stat. § 549.09, subd. 1(b), because federal law governs the claim. Third, Knoedler argues, in the alternative, that if this court determines Canadian Pacific is entitled to prejudgment interest, then the district court used the wrong start date for its calculation of prejudgment interest.
We affirm in part, reverse in part, and remand the district court's decision. The district court correctly rejected Knoedler's preemption challenge because the Minnesota Supreme Court determined in Engvall v. Soo Line Railroad Co. that the LIA does not preempt state common-law claims for contribution or indemnity that are asserted by a railroad against a manufacturer. 632 N.W.2d 560, 570-71 (Minn. 2001). Because Engvall is binding precedent and governs our analysis of this issue, we affirm the district court's denial of Knoedler's summary-judgment motion. The district court also correctly determined that Canadian Pacific is entitled to prejudgment interest under Minnesota law. While it is true that prejudgment interest is not recoverable in a FELA action brought in state court, Canadian Pacific commenced a common-law claim for contribution. The district court erred, however, in determining that Canadian Pacific is entitled to prejudgment interest from the date it commenced its consolidated third-party action. We conclude that Canadian Pacific is entitled to prejudgment interest from the date its contribution damages "were incurred," which is the date Canadian Pacific settled with each employee. See Minn. Stat. § 549.09, subd. 1(b).
FACTS
In 2013, three Canadian Pacific employees, Daniel Miller, Brandon Wolf, and Joseph Heilman, were injured as a result of the unexpected backwards collapse of their locomotive seats. Each of the three employees sued Canadian Pacific in a separate action, asserting that the railroad caused their injuries by (1) providing them with "unsafe" locomotives in violation of the Locomotive Inspection Act (LIA), and (2) failing to provide a "reasonably safe" place to work in accordance with the Federal Employers Liability Act (FELA).
Beginning in August 2014, Canadian Pacific brought third-party contribution and/or indemnity claims against Knoedler in each of the three FELA lawsuits.[1] The third-party complaints alleged that the locomotive seats involved in all three cases were Knoedler brand seats, and that Knoedler failed to design and manufacture seats that complied with the LIA and "applicable federal regulations." Canadian Pacific asserted that if it was "found to be liable" to its employees, it was "entitled to indemnity or appropriate contribution" from Knoedler.
The three FELA lawsuits were consolidated on October 16, 2015. Canadian Pacific served Knoedler with its consolidated third-party complaint on October 20, 2015. Between December 2015 and October 2016, Canadian Pacific reached settlements with each employee in the combined *647 amount of $2,464,446.40.[2] Consistent with the settlement agreements, the district court dismissed the three FELA claims against Canadian Pacific.
Knoedler filed a motion for summary judgment and argued that Canadian Pacific's contribution and/or indemnification claims are "preempted by federal law, namely the Locomotive Inspection Act." Knoedler asserted that Canadian Pacific's claims are based entirely "upon violations of the LIA and applicable federal regulations," and that the United States Supreme Court decided in Napier v. Atlantic Coast Line Railroad , 272 U.S. 605, 612-13, 47 S.Ct. 207, 209-10, 71 L.Ed. 432 (1926), that the "LIA fully occupies the field of locomotive design to the exclusion of all other state laws."
Canadian Pacific opposed summary judgment and argued that the Minnesota Supreme Court previously rejected Knoedler's argument in a 2001 decision which reasoned, according to Canadian Pacific, that "the field preempted by the LIA does not include state common law actions based on a violation of the LIA." Engvall , 632 N.W.2d at 570-71. At a hearing on the motion, Knoedler argued that Engvall is no longer controlling because the United States Supreme Court had "revisited the issue" in Kurns v. R.R. Friction Prod. Corp. , 565 U.S. 625, 132 S.Ct. 1261, 182 L.Ed.2d 116 (2012). The district court denied Knoedler's motion after determining that Engvall is still good law and held that claims for "contribution and indemnity [are] not preempted."
Before the jury trial, Knoedler and Canadian Pacific exchanged written "global" settlement offers under Minn. R. Civ. P. 68.01. On February 27, 2017, Canadian Pacific made a settlement offer in the amount of $1,750,000. On March 2, 2017, Knoedler rejected Canadian Pacific's offer and made a counter-offer of $810,000. No settlement was reached.
At the close of a seven-day trial, the district court determined that Canadian Pacific's settlements with its three employees were reasonable as a matter of law.[3] The jury returned a verdict in favor of Canadian Pacific on its contribution claims. In its special verdict, the jury found that Knoedler violated the LIA by "providing seats which were (a) not in proper condition and safe to use in locomotives without unnecessary danger of personal injury and/or were (b) not securely mounted and braced." The jury also determined that Knoedler's LIA violation caused the injuries sustained by each of the three Canadian Pacific employees. Additionally, the jury determined that Canadian Pacific violated the LIA, and also caused each employee's injuries. Finally, the jury allocated the fault of each party for the injuries sustained by each employee, finding that Knoedler was 50% at fault, as was Canadian Pacific. After the jury verdict, the district court directed entry of judgment for Canadian Pacific in the amount of $1,232,223.20.
In April 2017, Canadian Pacific filed a motion for prejudgment interest under Minn. Stat. § 549.09, subd. 1, arguing that the district court should award interest on the judgment running from the dates that *648 it had settled with each employee. Knoedler opposed and argued, in part, that the district court should award prejudgment interest only on the amount of Knoedler's final settlement offer to Canadian Pacific, which was $810,000, because Knoedler's offer was "closer to the jury's verdict sum than [Canadian Pacific's offer]." See Minn. Stat. § 549.09, subd. 1(b) ("If the amount of the losing party's offer was closer to the judgment or award than the prevailing party's offer, the prevailing party shall receive interest only on the amount of the settlement offer or the judgment or award, whichever is less ....").
In a written decision, the district court granted Canadian Pacific's motion for prejudgment interest, but agreed with Knoedler that section 549.09"limits the sum by which prejudgment interest can be calculated to $810,000." The district court also determined that prejudgment interest should be computed from the dates that Knoedler was notified of the three FELA settlements and end on the date of Knoedler's $810,000 settlement offer. Following this reasoning, the district court determined that Canadian Pacific is entitled to $47,702.52 in prejudgment interest.
Canadian Pacific requested leave, via letter, to file a motion to reconsider the amount of prejudgment interest because "the starting dates used to calculate [Canadian Pacific's] prejudgment interest [are] inconsistent with existing law and [are] in error." Canadian Pacific conceded in its letter that the "amount upon which pre-judgment interest should be calculated is $810,000" and stated that "the end date of the pre-judgment interest calculation should be March 2, 2017," the date of Knoedler's settlement offer. Canadian Pacific argued, however, that the district court should have calculated prejudgment interest from the commencement of Canadian Pacific's consolidated third-party action against Knoedler, October 20, 2015.
The district court granted Canadian Pacific's request and both parties filed briefs. Knoedler argued that Canadian Pacific is not entitled to prejudgment interest because federal law governed the claim. Alternatively, Knoedler argued that the district court correctly calculated the prejudgment interest award from the date that Knoedler was notified of "the settlement amounts and corresponding releases." Knoedler also contended that Canadian Pacific's damages are special damages and were not "incurred" until Canadian Pacific settled with its employees.
In a November 2017 order, the district court found that "both ... entities raise[d] issues not raised in prior briefing," but it nonetheless would consider the arguments. After additional briefing, the district court granted Canadian Pacific's motion for reconsideration and determined that the appropriate date to begin computing Canadian Pacific's prejudgment interest by contribution damages is "the date of the commencement of the action," October 20, 2015, and awarded Canadian Pacific $110,737 in prejudgment interest. After concluding that Knoedler had failed to timely argue that federal law precluded the prejudgment-interest claim, the district court declined to decide that issue. Knoedler appeals.
ISSUES
I. Did the district court err in determining that Canadian Pacific's common-law contribution and/or indemnification claims are not preempted by federal law?
II. Did the district court err in determining that Canadian Pacific is entitled to prejudgment interest under Minn. Stat. § 549.09, subd. 1(b) ?
III. Did the district court err in computing prejudgment interest for Canadian *649 Pacific's contribution damages from the commencement of the consolidated action?
ANALYSIS
I. The district court did not err in determining that Canadian Pacific's contribution and/or indemnification claims against Knoedler are not preempted by federal law.
Knoedler argues that Canadian Pacific's common-law contribution and/or indemnity claims are preempted by the LIA and the district court erred in denying summary judgment on this issue. The district court shall grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01.[4] This court reviews the district court's legal conclusions on summary judgment de novo, viewing "the evidence in the light most favorable to the party against whom summary judgment was granted." Commerce Bank v. W. Bend Mut. Ins. Co. , 870 N.W.2d 770, 773 (Minn. 2015).
Generally, the denial of a motion for summary judgment is outside our scope of review where a trial has been held and the parties have been given a full and fair opportunity to litigate their issues. See Bahr v. Boise Cascade Corp. , 766 N.W.2d 910, 918 (Minn. 2009). In Bahr , the supreme court noted an exception, however, when "the denial of summary judgment is based on a legal conclusion on an issue that is not presented to the jury for determination." Id. at 918 n.9. In this case, whether Canadian Pacific's common-law claims are preempted by federal law is a question of law not presented to the jury, and therefore, is reviewable by this court.
We begin our analysis with a summary of the pertinent federal law and the preemption doctrine. The LIA provides that "a locomotive ... and its parts and appurtenances" must be "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1) (2012). Under the LIA, the Federal Railroad Administration has issued regulations that provide the governing standards of care for locomotive equipment, including seats. See 49 U.S.C. § 103(g) (2012) (providing the Administrator the authority to promulgate regulations); see also 49 C.F.R. § 229.119(a) (requiring locomotive seats to "be securely mounted and braced").
"While the LIA and its regulations provide binding standards for the suppliers of locomotives and locomotive equipment, as well as for railroad companies, the statute does not provide a private right of action to employees injured by defective equipment." Delaware & Hudson Ry. Co. v. Knoedler Mfrs., Inc. , 781 F.3d 656, 659 (3d Cir. 2015) (citing Urie v. Thompson , 337 U.S. 163, 188-89, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949) ) (other citations omitted). Instead, an injured employee must bring an action against their employer under FELA. Id. (citing 45 U.S.C. §§ 51 - 60 (2012) ); see also Engvall , 632 N.W.2d at 565 (providing that FELA
*650 "allows railroad employees to recover from their employers for employment-related injuries caused by employer negligence"). If an employer is found liable in a FELA action, then the employer may seek to pass along some or all of its liability to third parties. Norfolk & W. Ry. Co. v. Ayers , 538 U.S. 135, 165, 123 S.Ct. 1210, 1228, 155 L.Ed.2d 261 (2003). "[I]t accords with the FELA's overarching purpose to require the employer to bear the burden of identifying other responsible parties and demonstrating that some of the costs of the injury should be spread to them." Id.
Federal preemption derives from the Supremacy Clause of the United States Constitution, which states, in part, that "This Constitution, and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. Federal law preempts state law when (1) a federal statute contains an express preemption clause; (2) preemption can be inferred from extensive congressional legislation in a regulated field; or (3) state law conflicts with federal law. See Boyd v. BNSF Ry. Co. , 874 N.W.2d 234, 237 (Minn. 2016). For a railroad worker's claim against the railroad, courts have focused on the second type of preemption. For example, in Napier v. Atl. Coast Line R.R. Co. , the United States Supreme Court held that the LIA preempts all state laws designed to protect railroad workers and to regulate railroads because Congress "intended to occupy the field" pertaining to "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." 272 U.S. at 611-13, 47 S.Ct. at 209-10. The Supreme Court concluded that any "requirements by the states are precluded, however commendable or however different their purpose." Id. at 613, 47 S.Ct. at 210.
In Engvall v. Soo Line R.R. Co. , the Minnesota Supreme Court considered whether the LIA also preempts a railroad's common-law claim for contribution and/or indemnity against a manufacturer of locomotives and their equipment. 632 N.W.2d at 563. Engvall was injured during the course of his employment and sued his employer, Soo Line Railroad, under FELA. Id. Soo Line, in turn, filed a third-party complaint for contribution and/or indemnity against General Motors (GM), alleging, in part, that Engvall's injury was "the result of a design flaw" in the locomotive that GM manufactured. Id. The district court granted summary judgment to GM after concluding that Soo Line's third-party claims were preempted by the LIA under Napier . Id. at 564. This court affirmed and the supreme court granted review. Id.
The supreme court reversed and remanded. Id. at 572. The supreme court reasoned that GM wrongly "equates the preemption of state law pertaining to locomotive design, construction, and material, with the preemption of all state law actions." Id. at 570. The supreme court explained that the LIA preempts state regulation of locomotives, not state common-law claims based on violations of the LIA. Id. at 570-71. A contribution claim, like the one Soo Line asserted against GM, did not undermine "the goal of nationwide uniformity" because there was "no state standard [ ] imposed" and the "alleged liability [was] premised on a failure to comply with the LIA." Id. The supreme court concluded that "the field preempted by the LIA does not include state common law actions based on a violation of the LIA." Id. at 571.
If Engvall is binding precedent, then Knoedler concedes that Canadian Pacific's third-party claims are not preempted. But Knoedler argues that the United States *651 Supreme Court's 2012 decision in Kurns v. R.R. Friction Prods. Corp. implicitly overruled Engvall . In that case, a retired railroad employee sued locomotive and locomotive parts distributors and manufacturers alleging state common-law claims for personal injuries caused by his exposure to asbestos. 565 U.S. at 628-29, 132 S.Ct. at 1264-65. Specifically, the employee alleged that the railroad equipment was "defectively designed," and that the locomotive and equipment manufacturers "failed to warn of the dangers of asbestos or to provide instructions regarding its safe use." Id. The Supreme Court held that the state common-law claims are preempted because they were "aimed at the equipment of locomotives," which, under Napier , "fall[s] within the pre-empted field." Id. at 634, 132 S.Ct. at 1268. Kurns concluded that "state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by the LIA." Id. at 637, 132 S.Ct. at 1270.
Knoedler argues that Engvall "ceased to be binding law in Kurns ' wake," and "all state common law claims," even those permitted under Engvall , are "preempted by the LIA." We are not persuaded for two reasons. First, Kurns did not discuss or consider whether federal law preempts a railroad employer's common-law claim for contribution and/or indemnity for damages paid to a railroad employee under FELA. See id. Kurns did not involve either a FELA claim or a claim for contribution and indemnity. Second, and more fundamentally, Kurns did not hold that all state common-law claims regarding design and manufacture of locomotives are preempted by the LIA. See Delaware & Hudson Ry. Co. , 781 F.3d at 662 ("[Appellants] incorrectly read Napier and Kurns to say that all state claims regarding the design and manufacture of locomotive equipment are preempted by the LIA. But those decisions did not speak so broadly."). Instead, Kurns held that a state may not impose its own duties and standards of care on the manufacturer and maintenance of locomotives through a common-law product-liability action. Kurns , 565 U.S. at 637-38, 132 S.Ct. at 1270.
Kurns left unanswered the question of whether the LIA preempts a common-law claim, "premised on a violation of the duties and standards of care stemming from the LIA itself; in other words whether a state claim based on a federal standard of care is preempted." Delaware & Hudson Ry. Co. , 781 F.3d at 662. Engvall answered this question, and explicitly held that "the field preempted by the LIA does not include state common law actions based on a violation of the LIA." 632 N.W.2d at 571.
Here, Canadian Pacific's third-party claims against Knoedler are based on violations of the LIA, not violations of state law. Count I alleged that "Knoedler owed [Canadian Pacific] a duty to design and manufacture the locomotive seat so as to comply with the [LIA] and federal regulations promulgated thereunder." And the issue at trial was whether Knoedler violated the LIA, not whether Knoedler violated a common-law duty or standard of care. In fact, the special-verdict form specifically asked the jury to determine whether Knoedler "violate[d] the [LIA] by providing seats which were (a) not in proper condition and safe to use in locomotives without unnecessary danger of personal injury and/or were (b) not securely mounted and braced?" See 49 C.F.R. § 229.119(a). Thus, we conclude that, under Engvall , Canadian Pacific's contribution and/or indemnification claims are not preempted by the LIA.
Knoedler asserts several other reasons why this court should conclude otherwise.
*652 First, Knoedler argues that, "affirming Engvall 's holding would strip Kurns of any meaning." We disagree. Kurns held that "state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by the LIA." 565 U.S. at 637, 132 S.Ct. at 1270 (emphasis added). Engvall concluded that "state common law actions based on a violation of the LIA " are not preempted. 632 N.W.2d at 571 (emphasis added). Kurns , therefore, analyzed a different issue, and is not "swallow[ed]" by Engvall .
Second, Knoedler argues that this case, and cases like it, "threaten[ ] national uniformity of locomotive equipment." But, as the Third Circuit recently reiterated when it reversed a district court's decision to dismiss a railroad's contribution and/or indemnity claims under Kurns :
[T]he policy behind preemption does not support excluding the state-law claims at issue here. The primary rationale for federal preemption in the field of railroad safety regulation is national uniformity. Preemption allows railroad carriers to abide by a single set of national equipment regulations, instead of having to meet different standards and, potentially, to change equipment when a train crosses state lines. It is therefore clear why Napier and Kurns did not allow states to impose their own standards of care-either through state regulations or through state tort liability-with respect to locomotive equipment. But the enforcement under state law of a federal standard of care does not undermine national uniformity because it does not impose conflicting regulations that a railroad must heed during interstate travel.
Delaware & Hudson Ry. Co. , 781 F.3d at 666 (citations omitted). The Minnesota Supreme Court adopted similar reasoning in Engvall . See 632 N.W.2d at 570-71. We conclude that applying Engvall here does not threaten national uniformity in railroad safety regulation.
Finally, Knoedler urges this court to adopt the reasoning from the dissent in Delaware & Hudson Ry. Co. and hold that the LIA preempts all state claims, even contribution and indemnity claims for FELA damages, based on a violation of the LIA. But this court is bound by Engvall , which held that a railroad's third-party claims are not preempted by the LIA. See In re Gillette Children's Specialty Healthcare , 867 N.W.2d 513, 519 (Minn. App. 2015) ("When interpreting a federal statute, this court is bound by the opinions of the United States Supreme Court and the opinions of the Minnesota Supreme Court that interpret and apply federal law."), aff'd , 883 N.W.2d 778 (Minn. 2016).
Because Engvall held that federal law does not preempt a railroad's claim for contribution and/or indemnity against a railroad locomotive manufacturer based on an employee's FELA suit for violation of the LIA, and because Engvall remains binding precedent, we conclude that the district court did not err when it denied summary judgment on this issue.
II. Canadian Pacific is entitled to seek prejudgment interest on its contribution damages under Minn. Stat. § 549.09, subd. 1(b).
Under Minnesota law, a successful plaintiff in a state court action generally may recover prejudgment interest on a money judgment. See Minn. Stat. § 549.09, subd. 1(b). While Canadian Pacific was a successful plaintiff in a state court action and received a money judgment, Knoedler points out that Canadian Pacific's third-party action seeks contribution for FELA damages paid to the three employees. Knoedler argues that, because a plaintiff in a FELA action is "prohibited from seeking *653 prejudgment interest," Canadian Pacific is also "prohibited" from seeking prejudgment interest.[5] This issue raises a pure question of law, which receives de novo review on appeal. See Boyd , 874 N.W.2d at 237.
Knoedler raised this issue for the first time in opposition to Canadian Pacific's motion for reconsideration. The district court allowed briefing on the issue but later concluded that, because Knoedler failed to timely raise this issue, the court would decline to decide it. Canadian Pacific also filed a motion asking this court to deem the issue waived. See Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)). Canadian Pacific argues that this is not the "proper case for the court to grant an exception to the waiver rule." We are not persuaded for at least two reasons.
First, as pointed out by this court in its special-term order referring the issue to this panel, this "is not a typical Thiele issue because appellants did present the argument at issue to the district court, and the district court did consider it, if only to determine that it was not timely raised." Second, the rule that issues not decided by the district court will not be addressed by the appellate court is not "ironclad." Putz v. Putz , 645 N.W.2d 343, 350 (Minn. 2002) ; see also Minn. R. Civ. App. P. 103.04 (noting that appellate courts may address issues as justice requires). An appellate court may decide an issue not "presented to or considered by the trial court" when the issue is "plainly decisive of the entire controversy on its merits," is "raised prominently in the briefing," does not prejudice either party, or involves a question of law not dependent on "new or controverted facts." See Roth v. Weir , 690 N.W.2d 410, 413 (Minn. App. 2005).
Here, the issue was fully briefed by the parties in district court and on appeal. More importantly, the issue involves a question of law and does not depend on new or controverted facts, and "there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question." See id. Further, if federal law precludes Canadian Pacific's claim for prejudgment interest, this court need not decide the third issue on appeal.[6] Thus, we deny Canadian Pacific's motion and proceed to consider whether Canadian Pacific is entitled to seek prejudgment interest or if it is barred based on federal caselaw that precludes FELA plaintiffs from receiving prejudgment interest.
We begin by comparing Canadian Pacific's common-law claim with the railroad employee's FELA claim. Canadian Pacific pursued contribution and/or indemnification from Knoedler, but only its *654 contribution claims were presented to the jury. A common-law claim for contribution requires "first, a common liability of two or more actors to the injured party, and second, payment by one of the actors of more than its fair share of the common liability." City of Willmar v. Short-Elliott-Hendrickson, Inc. , 512 N.W.2d 872, 874 (Minn. 1994) ; see also Engvall , 632 N.W.2d at 568 ("The very essence of the action of contribution is common liability."). When joint tortfeasors are both liable for a loss, the loss is to be allocated between them "in proportion to [their] relative culpability." See Tolbert v. Gerber Indus., Inc. , 255 N.W.2d 362, 367-68 (Minn. 1977) ("By limiting the reallocation of loss between joint tortfeasors to contribution based upon relative fault, the more culpable tortfeasor will continue to bear a greater share of the loss, but at the same time his joint tortfeasor will not continue to escape all liability....").
In contrast, while a railroad employee's FELA claim may be brought in state court, it is a cause of action arising solely under federal law. Monessen Sw. Ry. Co. v. Morgan , 486 U.S. 330, 335, 108 S.Ct. 1837, 1842, 100 L.Ed.2d 349 (1988). A state court resolving a FELA claim must apply federal substantive law. Id. This is true not only when ascertaining liability under FELA, but also when determining damages. Id. Monessen further stated, "[i]t has long been settled that the proper measure of damages under the FELA is inseparably connected with the right of action, and therefore is an issue of substance that must be settled according to general principles of law as administered in the Federal courts." Id. (quotations omitted). In particular, Monessen concluded that federal law does not authorize prejudgment interest for a prevailing plaintiff in a FELA action. Id. at 338-39, 108 S.Ct. at 1843-44.
The Minnesota Supreme Court also has held that a successful FELA plaintiff may not recover prejudgment interest. See Kinworthy v. Soo Line R. Co. , 860 N.W.2d 355, 358-60 (Minn. 2015) ("We conclude that prejudgment interest under Minn. Stat. § 549.09, subd. 1(a)-(b), whether it is pre-verdict or post-verdict, is not recoverable in a FELA action brought in Minnesota state court."). In doing so, our supreme court reasoned that "prejudgment interest constitutes a substantial part of a defendant's potential liability under FELA, and therefore should be determined by federal substantive law, not state procedural rules." Id. at 358. Because the three employees sued Canadian Pacific under FELA, Knoedler correctly contends that, had they obtained a money judgment, they would not have been entitled to prejudgment interest under Kinworthy and Minn. Stat. § 549.09, subd. 1. Knoedler reasons from this that Canadian Pacific is also not entitled to prejudgment interest.
But Knoedler is mixing federal apples with state oranges. Canadian Pacific did not prevail on a FELA claim against Knoedler, nor did it receive FELA damages; it prevailed on a common-law claim for contribution. It is true that contribution requires a plaintiff to prove shared liability with a defendant and an underlying plaintiff. See Horton by Horton v. Orbeth, Inc. , 342 N.W.2d 112, 114 (Minn. 1984). Here, the jury determined that Knoedler and Canadian Pacific shared common liability because they violated the LIA and caused the three employees' damages. Even though the jury turned to federal law for the standard of care to determine Knoedler's common liability, this does not alter the character of Canadian Pacific's contribution claim, which arises under state common law.
We conclude that Canadian Pacific's contribution claim is not governed by federal *655 law and, because Canadian Pacific prevailed on its common-law claim for contribution damages paid in a FELA action, it is entitled to prejudgment interest under Minn. Stat. § 549.09, subd. 1(b).
III. The district court erred in determining that prejudgment interest for contribution damages is computed from the commencement of the consolidated action.
In the alternative, Knoedler argues that the district court erred in computing Canadian Pacific's prejudgment interest award. The computation of prejudgment interest for a prevailing party is governed by several densely written sentences in Minn. Stat. § 549.09, subd. 1(b).[7] Narrowing our focus to the question of when to begin computing prejudgment interest on a money judgment, we turn to a single sentence in section 549.09, which provides:
The prevailing party shall receive interest on any judgment or award from the time of commencement of the action or a demand for arbitration, or the time of a written notice of claim, or as to special damages from the time when special damages were incurred , if later, until the time of verdict, award, or report only if the amount of its offer is closer to the judgment or award than the amount of the opposing party's offer.
Id. , subd. 1(b) (emphasis added). Thus, whether interest on a judgment accrues from "the time the action is commenced or the time the damages were incurred depends upon the nature of the damages." Tyroll v. Private Label Chems., Inc. , 493 N.W.2d 128, 132 (Minn. App. 1992), aff'd in part, rev'd in part , 505 N.W.2d 54 (Minn. 1993). Here, the district court apparently concluded that contribution damages are general damages. Therefore, prejudgment interest accrued as of the time of commencement of the action.[8] Knoedler argues that the district court erred because contribution damages are "special damages," therefore, prejudgment interest accrued from the time "special damages were incurred."
We review de novo the application of the interest-on-judgment provisions in Minn. Stat. § 549.09. See Duxbury v. Spex Feeds, Inc. , 681 N.W.2d 380, 390-91 (Minn. App. 2004), review denied (Minn. Aug. 25, 2004). In interpreting and applying the plain language of an unambiguous statute, "the court's role is to enforce the language of the statute." Caldas v. Affordable Granite & Stone, Inc ., 820 N.W.2d 826, 836 (Minn. 2012). When a statute uses technical *656 words and phrases, we apply "their special or defined meaning, and other words and phrases their plain and ordinary meaning." Poehler v. Cincinnati Ins. Co ., 899 N.W.2d 135, 140 (Minn. 2017) (citing In re Welfare of J.J.P ., 831 N.W.2d 260, 264, 266 (Minn. 2013) ).
We begin by considering the definitions of general and special damages: "General damages are the natural, necessary and usual result of the wrongful act or occurrence in question. Special damages are those which are the natural but not the necessary and inevitable result of the wrongful act." Ray v. Miller Meester Advert., Inc. , 684 N.W.2d 404, 407 (Minn. 2004) (quotations omitted); see also Tyroll , 493 N.W.2d at 133 ("Only damages that result from the special character, condition, or circumstances of the injured person are special damages."). Additionally, special damages are damages "to which an exact dollar amount can be assigned, such as medical expenses or lost wages." Auers v. Progressive Direct Ins. Co. , 878 N.W.2d 350, 353 (Minn. App. 2016) (determining special damages recoverable under Minn. Stat. § 573.02, subd. 2 (2014) ), review denied (Minn. July 19, 2016).
Like medical expenses or lost wages sought by a plaintiff in a personal-injury suit, contribution damages sought by a defendant in a third-party action are the natural but not the necessary result of the underlying claim. Here, an award of contribution damages depended on a number of factors: Canadian Pacific's settlement with its employees, the jury's finding that Knoedler violated the LIA and caused the employees' injuries, and the jury's allocation of fault between Knoedler and Canadian Pacific, which established that Canadian Pacific paid more than its fair share. See Willmar , 512 N.W.2d at 874.[9]
Contribution damages are also ascertainable in an exact dollar amount, although not until after a jury's allocation of fault between the third-party plaintiff and third-party defendant. See generally Skifstrom v. City of Coon Rapids , 524 N.W.2d 294, 296 (Minn. App. 1994) (noting interest is available on ascertainable special damages), review granted (Minn. Feb. 3, 1995), and appeal dismissed (Minn. Oct. 25, 1995). Indeed, following the jury's verdict in this case, "an exact dollar amount" was assigned to the contribution damages that Knoedler owed Canadian Pacific: Knoedler's proportionate share of the three employees' settlement was fifty percent based on the jury's allocation of fault. See Auers , 878 N.W.2d at 353 (providing that special damages are damages "to which an exact dollar amount can be assigned"); see also Ironwood Springs Christian Ranch, Inc. v. Walk to Emmaus , 801 N.W.2d 193, 197 (Minn. App. 2011) (in a contribution action "the remaining obligors are required to contribute to the extent [that the one] discharged the obligation in excess of what could justly be claimed from him" (quotation omitted)).
Canadian Pacific argues that, because it did not "make any specific request for special damages in its complaints against Knoedler," the "special damages exception does not apply" here. Minn. R. Civ. P. 9.07 requires a pleader to "specifically state[ ]" special damages. "The purpose of [ rule 9.07 ] is to give fair notice to opposing parties of matters not necessarily known to them, and to obviate the giving of such notice as to matters they would already *657 know." 1 David F. Herr & Roger S. Haydock, Minnesota Practice § 9.10 (4th ed. 2002). Here, Canadian Pacific's third-party complaint sufficiently pleaded contribution damages. Nothing further is required for notice pleading. Haugland ex rel. Donovan v. Mapleview Lounge & Bottleshop, Inc ., 666 N.W.2d 689, 694 (Minn. 2003) ("Minnesota is a notice pleading state.").
Because contribution damages are the natural but not necessary result of the underlying action, and because contribution damages are ascertainable in an exact dollar amount, we conclude that they are "special damages," as that term is used in Minn. Stat. § 549.09, subd. 1(b). Under the plain language of this statute, a prevailing party receives prejudgment interest on contribution damages from the time those damages were incurred. Minn. Stat. § 549.09, subd. 1(b) ; see also Tyroll , 493 N.W.2d at 133 (holding that "[i]nterest on an award of special damages does not begin to accrue until the time the special damages were incurred").
We also observe that interpreting special damages, as used in section 549.09, to include contribution damages is consistent with the purpose of the prejudgment-interest statute. Prejudgment interest is intended to compensate a prevailing plaintiff for the loss of the use of a money judgment, to encourage settlement, and to "encourage prompt payment of judgments." See Redleaf v. Redleaf , 807 N.W.2d 731, 735 (Minn. App. 2011) ; Zaretsky v. Molecular Biosystems, Inc. , 464 N.W.2d 546, 549 (Minn. App. 1990). Canadian Pacific did not lose use of its money judgment (i.e., its contribution damages) until it reached a settlement with the three employees. In fact, Canadian Pacific had not incurred any contribution damages until it paid more than its fair share. See Willmar , 512 N.W.2d at 874 (providing that a claim for contribution requires "payment by one of the actors of more than its fair share of the common liability"); see also Black's Law Dictionary 836 (9th ed. 2009) (defining "incur" as "[t]o suffer or bring on oneself (a liability or expense")).
Because Canadian Pacific is entitled to prejudgment interest on contribution damages from the time those damages were incurred, we conclude that the district court erred in computing prejudgment interest from the date Canadian Pacific commenced its consolidated third-party action. The district court should have awarded prejudgment interest on contribution damages from the dates that Canadian Pacific settled with the three employees because that is when Canadian Pacific incurred its damages. See Minn. Stat. § 549.09, subd. 1(b). Accordingly, we reverse the district court's order granting Canadian Pacific $110,737 in prejudgment interest and remand for further proceedings to compute prejudgment interest in accordance with this opinion.
DECISION
We affirm the district court's determination that the LIA does not preempt state common-law claims for contribution and/or indemnity asserted by a railroad against a manufacturer. We also conclude that Canadian Pacific is entitled to prejudgment interest on its money judgment for contribution damages under Minn. Stat. § 549.09, subd. 1(b). Finally, we conclude that the district court erred in computing the amount of prejudgment interest on contribution damages from the date Canadian Pacific commenced its third-party action. Under Minn. Stat. § 549.09, subd. 1(b), a prevailing party in a contribution action is entitled to prejudgment interest on a money judgment from the date its damages "were incurred," which in this case, are the dates that Canadian Pacific settled the underlying *658 FELA claims with the three employees.
Affirmed in part, reversed in part, and remanded; motion denied.

Canadian Pacific also brought contribution and/or indemnity claims against Atwood Mobile Products LLC and Atwood Mobile Products Inc. Atwood manufactured the " 'recliner mechanisms' which allegedly failed in these cases." Atwood Mobile Products LLC was dismissed from this lawsuit on summary judgment. The district court entered a default judgment against Atwood Mobile Products Inc. "for failure to file an appearance, answer or other responsive pleading." Canadian Pacific's third-party lawsuit against Atwood is not at issue in this appeal.

Canadian Pacific settled with Miller on December 21, 2015, for $880,968.17; Wolf on July 8, 2016, for $750,000; and Heilman on October 6, 2016, for $833,478.23. Knoedler was notified of the settlement with Miller on March 21, 2016, and of the settlements with Wolf and Heilman on October 11, 2016.

While it appears that Knoedler contested the reasonableness of the settlements at trial, Knoedler did not raise the issue on appeal.

The district court applied the former version of rule 56, which was recently "revamped" to more "closely follow" the federal rules. Minn. R. Civ. P. 56 2018 advisory comm. cmt. When promulgating amendments to rule 56, effective on July 1, 2018, and applicable to pending cases, the Minnesota Supreme Court specifically indicated that amended language on the standard for granting summary judgment reflects recent Minnesota caselaw. Order Promulgating Amendments to Rules of Civil Procedure , No. ADM04-8001 (Minn. Mar. 13, 2018). Because the legal standard is unchanged, we cite to the current version of rule 56.01, even though the district court's decision was issued before the amended rule took effect.

While Knoedler characterizes this issue as another preemption challenge, we disagree. This is a question of whether federal or state law governs Canadian Pacific's claim for prejudgment interest on common-law contribution damages.

Canadian Pacific argues that, because this issue is not decisive of the entire case, Roth does not permit this court to address the issue. We disagree with this characterization of Roth . Whether an issue is "decisive of the entire controversy on the merits" is just one factor to consider in determining whether to allow review of an issue. 690 N.W.2d at 413. In fact, in Roth , this court decided to review the disputed issue on appeal, even though the issue was not decisive of the entire controversy because the issue "was raised prominently in the briefing to this court." Id. We reach a similar conclusion in this appeal.

Following Canadian Pacific's motion for an award of prejudgment interest, the parties had several disputes about how to compute the award, including what amount was entitled to receive prejudgment interest (the entire contribution judgment or Knoedler's rule 68 offer of judgment), and on what date to end the computation of prejudgment interest (the date of Knoedler's rule 68 offer of judgment or the date the contribution judgment was entered). On appeal, we are presented only with the question of when to begin computing prejudgment interest on the contribution damages.

In its December 4, 2017 order granting Canadian Pacific's motion for reconsideration, the district court concluded that the appropriate date to begin calculating prejudgment interest was "the date of the commencement of the [consolidated third-party] action," October 20, 2015, and awarded Canadian Pacific $110,737 in prejudgment interest. Earlier, in its July 2017 order, the district court computed prejudgment interest commencing on the dates that Knoedler was notified of the three FELA settlements. The district court appears to have initially accepted Knoedler's position that prejudgment interest began to accrue once Knoedler had "written notice" of the settlements with the three employees. Knoedler does not make this argument on appeal.

In fact, Canadian Pacific's third-party complaint against Knoedler recognizes that its claim is contingent because it stated that "[i]n the event that [Canadian Pacific] is found to be liable to Plaintiff[s] ... then [Canadian Pacific] is entitled to indemnity or appropriate contribution."